The People of the State of New York, Respondent, *v.* Ernest D. Coleman, Appellant.

Fourth Department, January 7, 1959.

*Hugh McM. Russ, Jr.,* for appellant.

*John F. Dwyer, District Attorney (Leonard F. Walentynowicz* of counsel), for respondent.

*Per Curiam.* The defendant has appealed from a conviction of manslaughter in the first degree. His principal defense was that the homicide was justifiable because it was committed in the lawful defense of his wife under circumstances and conditions described in subdivision 1 of the latter portion of section 1055 of the Penal Law. Defendant testified, in this respect, that Lofton, the deceased, was endeavoring to stab the defendant's wife with a knife at the time the defendant entered into the physical encounter which resulted in Lofton's death.

The defendant therefore was entitled to a charge including the applicable provisions of section 1055 of the Penal Law and the general rules pertaining to justifiable homicide. The only portion of the charge that can be said to cover this subject was: '' However, if the People have sustained the burden of proof and have submitted proof sufficient to satisfy you beyond a reasonable doubt that the Defendant, Ernest Coleman, on the 25th day of August, 1956, did strike Eddie Lofton with this knife, did cut him to a degree that it caused subsequent death, and that he was not at the time engaged in defending himself or engaged in defending his wife who was in imminent danger of being attacked and perhaps seriously injured by Eddie Lofton, then it is equally your responsibility to find him guilty.''

Section 1055 of the Penal Law provides in part: '' Homicide is also justifiable when committed: 1. In the lawful defense of

the slayer, or of his or her husband, wife, parent, child, brother, sister, master or servant, or of any other person in his presence or company, when there is reasonable ground to apprehend a design on the part of the person slain to commit a felony, or to do some great personal injury to the slayer, or to any such person, and there is imminent danger of such design being accomplished ''.

It is readily apparent that this language of the Penal Law is much more favorable to the defendant than the quoted language from the charge. Under the Penal Law, if there is reasonable ground to apprehend a design to do great personal injury and there is imminent danger of such design being accomplished, the slaying is justifiable. Under the charge, the language '' reasonable ground to apprehend a design '' to injure is omitted. This is a serious distinction because the language of the charge submitted to the jury a factual question of whether or not there was actually imminent danger to the defendant's wife as distinguished from his reasonable ground to apprehend or believe that she was in imminent danger. If the jury, under the charge, found that she was not actually in imminent danger, then it was their duty to convict. If, under the language of the statute, there was reasonable ground to apprehend a design on the part of the person slain to do some great personal injury to defendant's wife and there was imminent danger of such design being accomplished, the jury would have had to find a verdict of not guilty. The distinction is not merely technical or subtle but real and substantial (*Shorter* v. *People,* 2 N. Y. 193).

Other portions of the charge were also prejudicial. Although the indictment was for manslaughter in the first degree, the Trial Justice saw fit to read to the jury sections of the Penal Law dealing with first and second degree murder. It was not necessary to read or mention these sections in order to give the jury a complete definition of manslaughter in the first and second degrees.

In *People* v. *Smith* (285 App. Div. 590), this court held that under an indictment for assault in the second degree, it was prejudicial for the court to read to the jury the provisions of the Penal Law relating to assault first degree and embodying the elements of an assault with intent to kill or commit a felony. We also held in *People* v. *Nicoll* (3 A D 2d 64) that it was error for the court to read to the jury statutes defining crimes which were not submitted to the jury for determination.

The trial court also charged the substance of the section of the Penal Law on justifiable homicide when committed by a

police officer or a person acting at his command or in his aid (§ 1055). The jury was then instructed that the defendant was not a public officer nor was he acting in the aid or assistance of a public officer. There was no reason for such instruction. It not only was unnecessarily confusing, but it might well have given the jury the impression that the acts of the defendant were to be examined in the light of the fact that he was not a police officer nor assisting an officer and that therefore this was one test of justifiable homicide that he could not meet. There was no claim by the defendant that he came within the scope of that rule or that he was to be given any advantage thereunder, and this submission was confusing and might well have influenced the jury. This phase was repeated and expanded upon.

In commenting upon the fact that the defendant and a witness for the defendant had been convicted of crimes, and discussing credibility, the court said in relation to the convictions: "It doesn't preclude the possibility that such a person could be telling the truth; some persons convicted of crimes have told the truth." It needs no comment to point out the adverse effect of such language.

One other matter requires comment. In the transcript of the charge in various places where the Judge indicated that he was about to read certain sections of the Penal Law, there appears in the record such language as, " (Read Section 1040 Penal Law) " and " (Read Section 1046 Murder in Second Degree)." We assume that this means that at that point the Judge read the sections described, but we cannot so determine from the record. A correct transcription of a charge would contain every word that the Judge utters and not the reporter's conclusion as to what was said. It may not be definitely ascertained from this record whether the Judge actually read the sections referred to or that he read them accurately. Such reporting practices should be carefully avoided.

Although there were no exceptions taken to the charge, the interests of justice require a reversal of the judgment of conviction and a new trial.

All concur. Present — McCurn, P. J., Williams, Bastow, Goldman and Halpern, JJ.

Judgment of conviction reversed on the law and facts and in the interests of justice and a new trial granted.