**UNITED STATES** of America ex rel. Almars **ELKSNIS**, Petitioner,

v.

Honorable A. P. **GILLIGAN**, Acting Warden of Green Haven Prison, Stormville, New York, Respondent.

No. 65 Civ. 2478.

United States District Court
S. D. New York.

June 13, 1966.

Rogge, Wright, Rogge & Wiener, New York City, for petitioner; O. John Rogge, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen. of New York, New York City, for respondent; Joel Lewittes, Asst. Atty. Gen., of counsel.

WEINFELD, District Judge.

Petitioner, now serving a sentence of from seventeen and one-half to thirty-five years under a judgment of conviction entered in the County Court, Westchester County, on his plea of guilty to manslaughter in the first degree, seeks his release under a writ of habeas corpus.

He advances four grounds in support of his application, two of which do not present any issue of violation of federal constitutional rights,[1] and one of which, while alleging deprivation of his right to counsel, upon the facts is without merit.[2] Thus, there remains to be considered his claim that he was denied due process of law in violation of the Fourteenth Amendment in that his plea of guilty was induced by a promise by the sentencing judge that the sentence would not exceed ten years, a promise that was not kept. The facts upon which this claim is here presented were urged by petitioner upon the state courts in support of a writ of error coram nobis to vacate the judgment of conviction. After an evidentiary hearing the application was denied;[3] the denial was affirmed without opinion by the Appellate Division,[4] and leave to appeal was denied. Thus petitioner has exhausted available state remedies and is properly before this court.[5]

1. The indictment accusing petitioner of second degree murder cannot be attacked in this court on the ground there was no evidence of a design to effect death, since the crime charged was within the jurisdiction of the state court. See Paterno v. Lyons, 334 U.S. 314, 322, 68 S.Ct. 1044, 92 L.Ed. 1409 (1948) (concurring opinion); Knewel v. Egan, 268 U.S. 442, 446, 45 S.Ct. 522, 69 L.Ed. 1036 (1925); United States ex rel. Tangredi v. Wallack, 343 F.2d 752 (2d Cir. 1965), affirming 236 F.Supp. 205, 206–207 (S.D.N.Y. 1964); United States ex rel. Bryant v. Fay, 239 F.Supp. 413, 414 (S.D.N.Y. 1965); United States ex rel. Priore v. Fay, 232 F.Supp. 906, 907 (S.D.N.Y. 1964). Petitioner's second claim—that he was not accorded his right of allocution—likewise fails to raise a federal question. See United States ex rel. Murphy v. Denno, 234 F.Supp. 692, 695 n. 10 (S.D.N.Y.1964). Cf. United States ex rel. Priore v. Fay, 232 F.Supp. 906, 907 (S.D.N.Y.1964).

2. Petitioner's claim of deprivation of counsel during his initial interrogation by the police does not warrant setting aside his conviction, since no product of the interrogation was used to obtain the conviction. See United States v. Miguel, 340 F.2d 812, 816 (2d Cir.), cert. denied, 382 U.S. 859, 86 S.Ct. 116, 15 L.Ed.2d 97 (1965); United States v. Guerra, 334 F.2d 138, 145–147 (2d Cir.), cert. denied, 379 U.S. 936, 85 S.Ct. 337, 13 L.Ed.2d 346 (1964). The further allegation that petitioner was deprived of his right to counsel because of the state's failure to assign counsel at his preliminary hearing, at which the charges contained in an information against him were read but at which he made no statement, and at his arraignment, at which he pleaded not guilty, is similarly devoid of merit, since neither the hearing nor the arraignment was a critical stage in the proceedings against him. See United States ex rel. Boone v. Fay, 231 F.Supp. 387, 389–390 (S.D.N.Y. 1964), cert. denied sub nom. Boone v. New York, 380 U.S. 936, 85 S.Ct. 945, 13 L.Ed.2d 823 (1965); United States ex rel. Spinney v. Fay, 221 F.Supp. 419, 421–422 (S.D.N.Y.), aff'd on opinion below, 325 F.2d 436 (2d Cir. 1963), cert. denied, 377 U.S. 938, 84 S.Ct. 1343, 12 L.Ed.2d 300 (1964). Compare White v. State of Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963); Hamilton v. State of Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961). Petitioner's final argument that had counsel been assigned he might have averted a second degree murder indictment is too conjectural. See United States ex rel. Cooper v. Reincke, 333 F.2d 608, 613 (2d Cir.), cert. denied, 379 U.S. 909, 85 S.Ct. 205, 13 L.Ed.2d 181 (1964).

3. People v. Elksnis, N.Y.L.J., Vol. 150, No. 20, p. 9, col. 4, July 29, 1963.

4. 23 A.D.2d 722, 258 N.Y.S.2d 351 (2d Dep't 1965).

5. Petitioner has unsuccessfully sought other relief in the state courts. He appealed from the judgment of conviction, which

The case is unusual in that the primary and basic fact—that the sentencing judge, prior to the entry of a plea of guilty, promised petitioner and his counsel that the sentence to be imposed would not exceed ten years—is not in dispute. The judge acknowledged that he made such a "commitment," the coram nobis judge so found, and the record permits no other finding. However, the coram nobis court made other findings—that the commitment was made upon an assumption that petitioner was a first felony offender; that when the judge learned otherwise at the time of sentence he "made it clear to the petitioner and his attorney that his promise was no longer binding and was withdrawn * * *. [They] understood the reason for the withdrawal of the promise and accepted it * * *." Implicit in this last finding is a determination that petitioner not only waived his right under state law to apply for vacatur of the guilty plea, either as a matter of discretion [6] or of absolute right because it was the result of inducement,[7] but also knowingly and intionally waived any federal constitutional claim of denial of due process.

Following argument by counsel, this court, upon a review of the coram nobis record, concluded that material facts relating to the crucial finding of waiver had not been fully explored and that the transcript of the sentence proceeding furnished scant evidential support therefor. The only evidence to uphold the finding was the judge's version of an off the record "discussion between counsel and the Court," as to which the defendant's attorney differed. Since a third party, an Assistant District Attorney, was present at this sidebar conference, this court directed a further evidentiary hearing; however, the Assistant had no recollection that he participated in the discussion.

In addition, the finding that the sentencing judge acted upon an assumption that the petitioner was a first felony offender appeared to rest on tenuous evidence, which was further brought into question by an official documentary exhibit.[8] Accordingly, a second hearing was held at which additional evidence was received from the sentencing judge. Thus, the disposition made herein rests upon the state record as supplemented by the evidentiary hearings before this court, which afforded an opportunity for demeanor appraisal of a prime, if not the prime, participant in significant events.

The record here presents two interrelated issues under the claim of denial of due process. One is whether the plea of guilty entered upon the prior promise of the judge that the sentence to be imposed would not exceed ten years was voluntary, and two, even assuming that such a guilty plea may ever be deemed voluntary, whether, when the judge with-

---

was affirmed, People v. Elksnis, 8 A.D. 2d 834, 190 N.Y.S.2d 154 (2d Dep't 1959). Leave to appeal to the Court of Appeals was denied and certiorari was denied, 362 U.S. 925, 80 S.Ct. 679, 4 L.Ed.2d 743 (1960). However, the grounds urged upon appeal were that the plea of guilty was not knowingly made and had been entered upon a mistake of fact in that both petitioner and his counsel were under the impression that the prior conviction was a misdemeanor, and that the sentence was excessive. He also sought relief by way of a state writ of habeas corpus which was dismissed, Elksnis v. Warden, N.Y.L.J., Vol. 150, No. 66, p. 15, col. 5, Oct. 2, 1963, aff'd sub nom. People ex rel. Elksnis v. Allen, 23 A.D.2d 723, 258 N.Y.S.2d 351 (2d Dep't), motion for leave to appeal denied, 15 N.Y.2d 488,

260 N.Y.S.2d 1027, 208 N.E.2d 790 (1965). The claim there was that the second degree murder indictment was void in that the evidence submitted to the grand jury only supported a charge of manslaughter in the first degree. Petitioner also attacked without success in the state and federal courts the previous conviction upon which he was sentenced as a multiple offender. United States ex rel. Elksnis v. Fay, 219 F.Supp. 606 (S.D. N.Y.1963).

6. See N.Y.Code Crim.Proc. § 337.

7. See Hogan v. Court of General Sessions, 296 N.Y. 1, 7–9, 68 N.E.2d 849 (1946); Lyons v. Goldstein, 290 N.Y. 19, 23, 47 N.E.2d 425, 146 A.L.R. 1422 (1943).

8. Cf. Townsend v. Sain, 372 U.S. 293, 316, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

drew his promise he was required to reinstate petitioner's original plea of not guilty.

Petitioner, a native of Latvia, was admitted to the United States in 1949 under the Displaced Persons Act.[9] He was then eighteen years of age.

On June 23, 1955 he was arrested in connection with the death of his common law wife, which occurred during an altercation when she was stabbed with a four-inch knife which petitioner had wrested from her after she allegedly had attempted to attack him, first with a hammer and then with the knife. The next day he was brought before a police magistrate upon a sworn complaint, charging him with manslaughter in the first degree in that he had stabbed his wife "without a design to effect death * * *." During this preliminary proceeding he was not represented, although the record indicates he was offered but declined counsel. He was bound over for grand jury action.

On July 8, 1955 the grand jury returned an indictment for murder in the second degree, charging him "with a design to effect" his wife's death. Upon arraignment in the County Court on July 13 he pleaded not guilty. He was then still without counsel, but was advised that one would be assigned. However, private counsel was retained sometime in September, and after several conferences with the District Attorney a proposal was advanced that defendant plead to a reduced charge, manslaughter in the first degree.

Previously, in November 1953, while serving in the United States Army, the petitioner had pleaded guilty to an assault charge and a sentence of ten months had been imposed.[10] Thus, a plea of guilty to a manslaughter charge meant that petitioner faced deportation, since it could be contended, as it subsequently was, that his two convictions involved moral turpitude.[11]

On December 9, 1955, before entering the plea, petitioner's counsel, with the defendant present, conferred with the judge in chambers, and, as the judge himself testified at the coram nobis hearing, the attorney "mentioned * * * that this man was likely to be deported, and that the ends of justice could therefore be served by giving him a sentence of not more than ten years * * *." The judge acknowledged that he did commit himself to such a maximum sentence. He not only so testified, but swore in an affidavit submitted in the coram nobis proceeding that he assured the attorney and the defendant that "if he would plead guilty to the crime of Manslaughter in the First Degree, that I would sentence him to a term not to exceed ten (10) years in State Prison."

Soon after the chambers conference the defendant withdrew his plea of not guilty and pleaded guilty to manslaughter in the first degree. Sentence was deferred to December 29, when the District Attorney filed an information charging the defendant as a second felony offender in that he had been previously convicted of assault, second degree. Defense counsel, based upon an official transcript which indicated the conviction was for assault in the third degree, a misdemeanor, challenged the accuracy of the information, whereupon the matter was put over to the following day. The next day, December 30, 1955, the prosecution again charged that defendant was a multiple offender, but this time presented a certified copy of the prior conviction. The judge then found as a matter of law that the prior conviction was a felony, and after an off the record "discussion between counsel and the Court" and a plea of mercy on behalf of the defendant, imposed a sentence of from seventeen and one-half to thirty-five years—contrary to his promise that the maximum term would be ten years.

---

9. 62 Stat. 1009 (1948).

10. Had a sentence of more than one year been imposed, petitioner would then have been subject to deportation, 8 U.S.C. § 1251(a) (4).

11. See 8 U.S.C. § 1251(a) (4).

## I

■ The court finds that the defendant's withdrawal of his original plea of not guilty and the entry of a plea of guilty was based upon the judge's promise that the sentence to be imposed would not exceed ten years. The defendant, in return for the judicial promise, gave up his right to have the state establish his guilt beyond a reasonable doubt on a jury trial. Deferring at this point consideration of whether the guilty plea was voluntary, nevertheless the imposition by the judge of a sentence contrary to his express promise is wholly irreconcilable with constitutional safeguards and due process of law.[12]

■ Fundamental fairness, as a concept of due process of law, requires when an accused has entered a plea of guilty based upon a promise by a judge who thereafter, whatever the reason, fails to adhere to his promise, that the judge, on his own motion, reinstate the not guilty plea and reinvest the defendant with the fundamental rights accorded him under our accusatory system of justice.[13] Of course, an accused so restored to his original position may well decide to plead guilty again,[14] but this must be a matter of his own free will and reasoned choice.

No matter how the facts of the instant case are viewed, it is beyond challenge that at the very least there was misunderstanding and confusion as to the prior conviction. In this circumstance alone, ordinary fairness required that the defendant be restored to his original position.[15] Indeed, it has been held that even where no specific promise was made, and a guilty plea was entered as a result of a "grave misunderstanding" solely on the part of defense counsel and not participated in by either the prosecution or the judge, the interests of justice required that the defendants be relieved of their pleas and the judgments of conviction vacated.[16]

■ The state, however, urges that the judge was released from his promise because it was made upon an assumption that the defendant was a first felony offender. It argues further that whatever constitutional claim arose in petitioner's favor by reason of the unfulfilled prom-

---

12. See United States ex rel. McGrath v. La Vallee, 319 F.2d 308 (2d Cir. 1963), where the Court of Appeals held that a petitioner was entitled to a hearing in order that he might prove that his plea was induced by a judicial promise of "consideration" which was later broken. Implicit in this holding is a doctrine that a plea of guilty based upon a judicial promise is invalid if the promise is not kept. Accord, Smith v. United States, 321 F.2d 954, 955–956 (9th Cir. 1963); People v. Farina, 2 N.Y.2d 454, 161 N.Y.S.2d 88, 141 N.E.2d 589 (1957), affirming 2 A.D.2d 776, 154 N.Y.S.2d 501 (2d Dep't 1956); People v. Guariglia, 303 N.Y. 338, 342–343, 102 N.E.2d 580 (1951); People v. Reilly, 23 A.D.2d 683, 257 N.Y.S.2d 513 (2d Dep't 1965); People v. Sullivan, 276 App.Div. 1087, 96 N.Y.S.2d 266 (2d Dep't 1950). See also Workman v. United States, 337 F.2d 226, 227 (1st Cir. 1964), where it was held that, a promise of a maximum sentence having been made by the sentencing judge, a defendant who had pleaded guilty in reliance on the promise and served the promised maximum term was entitled to his immediate release.

13. Cf. United States ex rel. McGrath v. LaVallee, 348 F.2d 373, 378 (2d Cir. 1965), where the petitioner argued "that it is inconsistent with due process for the sentencing judge to induce a plea on one understanding and then sentence on the basis of another. * * * The trial judge should have informed the defendant, according to this theory, that he had changed his mind and could no longer sentence as he had said he would, thus giving the defendant a chance to reinstate his plea of not guilty." The Court of Appeals, however, did "not reach the merits of the issue because, under orthodox notions of federal-state comity, it * * * [was] not yet ripe for federal adjudication."

14. Cf. Smith v. United States, 321 F.2d 954, 956 (9th Cir. 1963).

15. Cf. People v. Sullivan, 276 App.Div. 1087, 96 N.Y.S.2d 266, 268 (2d Dep't 1950); People v. Chichester, 262 App. Div. 567, 31 N.Y.S.2d 158, 160 (3d Dep't 1941).

16. People v. Forlano, 19 A.D.2d 365, 243 N.Y.S.2d 559 (1st Dep't 1963).

ise was waived when petitioner acquiesced in the judge's renunciation of his commitment. This court is of the view that any assumption which may have grounded the judge's promise is irrelevant on the issue of his duty to have vacated the guilty plea when he no longer deemed himself bound; moreover, the facts do not support the claim that he acted without knowledge of the defendant's criminal background. Four factors, one of them documentary, point in the opposite direction.

First, the judge and defense counsel are in accord that the defendant's likely deportation was discussed at the conference preceding the entry of the guilty plea, but they differ as to whether his prior record was mentioned. Since deportation could have been effected only in the event of his conviction of two crimes involving moral turpitude, it is obvious that, for deportation to have been the subject of discussion, petitioner must already have had a criminal record apart from the conviction that would follow upon a plea of guilty to the pending charge. Thus strong support is given to defense counsel's testimony that he "spelled out" the facts of defendant's prior record for the judge. While it is true the attorney was contending that the conviction was for assault in the third degree, a misdemeanor, nonetheless the discussion of deportation brought home knowledge that defendant's past was not without some criminal taint.

Next, on December 9, when upon the entry of the guilty plea the defendant's pedigree was taken, he acknowledged before the judge in open court a conviction for assault, although he, too, stated it was in the third degree. While the judge testified that he had no recollection of the incident, he did not deny that he must have heard the defendant's answer and that he knew or should have known of his prior record.

Third, as to the felony aspect of defendant's prior record, it is of substantial significance that the Assistant District Attorney in charge of the matter testified that petitioner's counsel was insistent that the prior conviction was a misdemeanor; that he viewed the matter otherwise and after checking into the records concluded that the assault conviction was a felony; that his recommendation of the plea of manslaughter in the first degree was on the basis that defendant was a second felony offender. The plea was entered three weeks before the day of sentence and of alleged withdrawal of the promise. When the Assistant was taxed, "The fact that he [defendant] was a second felony offender did not become a fact until December 30th, the day of sentence," he reiterated what he had testified to twice previously, "No, it became a fact before. He did not plead as a first offender; he pleaded as a second offender."

■ Finally, New York law provides that when a plea of guilty to a lesser offense than that charged is accepted by the court, the District Attorney must submit to the court a written statement setting forth his reasons for recommending the lesser plea, and that the court shall file the statement so that it becomes a public record.[17] The reduced plea certificate in the instant case, dated the very day the plea was taken, three weeks before the withdrawal of the promise, states, among other matters: "Defendant had a prior conviction for Assault in the Second Degree." However, the sentencing judge testified he never saw the certificate.

17. N.Y.Code Crim.Proc. § 342–a:
"PLEAS of guilty to lesser offense than that charged; requirements
"In any case where the court, upon the recommendation of the district attorney, and in furtherance of justice, accepts a plea of guilty to a crime or offense of a lesser degree or for which a lesser punishment is prescribed than the crime or offense charged, it shall be the duty of the district attorney to submit to the court a statement in writing in which his reasons for recommending the acceptance of such plea shall be clearly set forth. Such statement shall be filed by the court with the other papers in the case and shall be a public record subject to inspection by any person."

Considering that the deportation of petitioner necessarily meant he had a prior record, that he had so acknowledged in open court, albeit contending it was a misdemeanor, that the Assistant District Attorney's recommendation of a reduced plea was based on the fact defendant was a second felony offender, and that the reduced plea certificate specified the felony conviction, the court finds that the promise of a maximum sentence of ten years was not made on the basis of any assumption that the defendant was a first felony offender or without any prior criminal record.

We next consider the state's claim of waiver, resting upon the coram nobis court's finding that the judge acquainted the petitioner and his counsel of the withdrawal of his promise; that they acquiesced therein, and that thereby the defendant waived any federal constitutional due process claim based upon the unfulfilled promise. The state court's finding of waiver does not, however, bar independent consideration of the question.[18]

The sufficiency of evidence to sustain the finding must be tested against the controlling standard that a waiver is "an intentional relinquishment or abandonment of a known right or privilege," [19] and its corollary that the courts " 'indulge every reasonable presumption against waiver' of fundamental constitutional rights * * *." [20] And whether an intelligent waiver has been made depends upon the particular facts and circumstances of each case, includ-

ing "the background, experience and general conduct of the accused * * *." [21]

The transcript of the sentencing proceeding is barren of any statement by the judge of his withdrawal of his commitment or that it was based upon any assumption as to lack of prior criminal record; it is also barren of any indication that defendant or his counsel acquiesced in the withdrawal. What is relied upon to fill the void is the off the record "discussion between counsel and the Court." Defense counsel testified that it related solely to his continued challenge to the accuracy of the certified copy of the defendant's prior conviction for a felony. As to this aspect the judge's version is no different. However, when asked whether at the sidebar conference he told the lawyer he was withdrawing his commitment, he further testified, "Whether it was done in formal language, I am unable to say but I can say that I did state to him that this puts an entirely different light on this whole picture." At the hearing conducted by this court the judge added that he urged defense counsel to take the matter off the calendar so that counsel could review further his persistent contention that the prior conviction was a misdemeanor, but he refused. The lawyer vehemently denied that the judge ever revealed his changed attitude to him or to the defendant and further testified that when the sentence was imposed he was "practically shocked."

Whatever the conversation in camera between the judge and lawyer, far more important is that the judge concedes that

---

18. See Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963) ; United States ex rel. Williams v. Fay, 323 F.2d 65, 67 (2d Cir. 1963), cert. denied, 376 U.S. 915, 84 S.Ct. 667, 11 L.Ed.2d 611 (1964) ; United States ex rel. Wade v. Jackson, 256 F.2d 7, 9 (2d Cir.), cert. denied, 357 U.S. 908, 78 S.Ct. 1152, 2 L. Ed.2d 1158 (1958). Cf. Haynes v. State of Washington, 373 U.S. 503, 515, 83 S. Ct. 1336, 10 L.Ed.2d 513 (1963). See also Collins v. Beto, 348 F.2d 823, 832 (5th Cir. 1965) (concurring opinion).

19. Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461

(1938). Accord, Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

20. Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). Accord, Emspak v. United States, 349 U.S. 190, 198, 75 S.Ct. 687, 99 L.Ed. 997 (1955) ; Glasser v. United States, 315 U.S. 60, 70, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

21. United States v. Drummond, 354 F.2d 132, 148 (2d Cir. 1965). Accord, Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

252

at no time, either on the record or off the record, did he specifically announce the withdrawal of his commitment or inform the defendant that the promise of a maximum ten-year sentence would not be kept.

 Events following the off the record discussion moved with rapidity. Counsel stepped down from the bench, urged leniency for his client and sentence was then imposed. While failure to afford the defendant his statutory right of allocution [22] does not present a federal constitutional issue,[23] that he was not called upon to speak on his own behalf has significance on the issue of whether he intentionally acquiesced in the withdrawal of the promise and surrendered his right to challenge the sentence.[24]

 The state places great emphasis upon the fact that neither the defendant nor his attorney protested or made any immediate motion for the withdrawal of the plea. The attorney's explanation for his failure to take forthwith remedial action was that, apart from his "shock," this was the last case heard by the judge, whose term of office was about to expire,[25] and that the proceedings abounded in confusion because of ceremonial activities which were conducted in the courtroom immediately after sentence was imposed; further, he felt there was nothing that could be done, and only subsequently did he learn that post-conviction relief was available. The defendant, then twenty-four years of age, quite illiterate, unaware of what had transpired at the off the record conference, undoubtedly stunned by the imposition of a heavy sentence contrary to the judicial promise and afforded no opportunity to speak, hardly could be expected to move to vacate his plea. Even assuming that defense counsel may be deemed to have acquiesced in the judge's withdrawal of the promise—and the stenographic record does not show he did—it is beyond question he did not consult with the defendant; in the circumstances, the attorney's alleged acquiescence without defendant's consent does not serve to charge the defendant with understandingly and knowingly surrendering his right to have his original plea reinstated.[26] Moreover, as already noted, the duty was upon the court to vacate the plea and not upon the defendant. Defendant, however, did challenge the court's action. In January 1956 he filed a direct appeal attacking the judgment of conviction as void because the sentence was in excess of that promised, and in subsequent legal proceedings, commencing in June of the same year when he moved before the trial court to dismiss the information charging him as a second felony offender or in the alternative to allow the withdrawal of the guilty plea, he has consistently maintained his position.[27]

 The evidence warrants a finding that the judge at the time of sentencing did not advise the defendant of the withdrawal of his promise, and further that the defendant did not knowingly waive or relinquish his right to attack the judgment of conviction based upon the withdrawal.

## II

There remains the question of whether the guilty plea itself, considering all the circumstances under which it was entered, was voluntary.

22. See N.Y.Code Crim.Proc. § 480.

23. United States ex rel. Murphy v. Denno, 234 F.Supp. 692, 695 n. 10 (S.D.N.Y. 1964). Cf. United States ex rel. Priore v. Fay, 232 F.Supp. 906, 907 (S.D.N.Y. 1964).

24. Cf. United States v. Taylor, 303 F.2d 165, 167–168 (4th Cir. 1962).

25. The judge was sitting by appointment and his term of office expired on December 31, 1955.

26. See Henry v. State of Mississippi, 379 U.S. 443, 451, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965); Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Whitus v. Balkcom, 333 F.2d 496, 505–510 (5th Cir.), cert. denied, 379 U.S. 931, 85 S.Ct. 329, 13 L.Ed.2d 343 (1964).

27. See note 5 supra.

It is fundamental that an accused's plea of guilty, the equivalent of a conviction after trial, with all the substantive and procedural due process safeguards of the Federal Constitution, may be accepted only if made voluntarily and understandingly [28]—which means that the plea reflects the considered choice of the accused, free of any factor or inducement which has unfairly influenced or overcome his will. A guilty plea that is induced by coercion, promises, or is otherwise "unfairly obtained or given through ignorance, fear or inadvertence," [29] is involuntary and inconsistent with due process of law, and any conviction based thereon is void.[30]

The fact that a promise which induced a guilty plea was subsequently kept does not establish that the plea was voluntary.[31] Whether it was must be decided in the light of events at the time of its entry.[32] The issue does not lend itself to precise mathematical determination; [33] its resolution is one of fact which "involves an evaluation of psychological factors and elements that may be reasonably calculated to influence the human mind." [34] A crucial question here is the impact, if any, of the judge's promise upon the defendant. The fact that the promise may not have been deliberately designed or intended to influence or to induce the defendant to plead guilty is not material—the question is did it have that impact.

The issue need not be resolved upon petitioner's subjective testimony that the judicial promise was the only reason he pleaded guilty and except for it he would have stood upon his not guilty plea. That the promise was the prime factor for petitioner's decision to forego a trial finds support in other evidence. Previously the petitioner not only had adhered to his not guilty plea, but steadfastly had asserted his purpose to resist the state's charges in reliance upon defenses of lack of criminal intent, self defense and temporary insanity—defenses which his lawyer advised him were meritorious.[35] And while the defendant's guilt or innocence is not in issue on this motion,[36] that the alleged defenses were of substance appears to have been

28. Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962) ; Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 71 L.Ed. 1009 (1927) ; United States v. Tateo, 214 F.Supp. 560, 565 (S.D.N.Y.1963).

29. Kercheval v. United States, 274 U.S. 220, 224, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927).

30. Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962) ; Waley v. Johnston, 316 U.S. 101, 104, 62 S.Ct. 964, 86 L.Ed. 1302 (1942) ; Walker v. Johnston, 312 U.S. 275, 286, 61 S.Ct. 574, 85 L.Ed. 830 (1941).

31. See Shelton v. United States, 246 F.2d 571, 577, 580 (5th Cir. 1957) (dissenting opinion), rev'd on confession of error by Solicitor General, 356 U.S. 26, 78 S. Ct. 563, 2 L.Ed.2d 579 (1958).

32. See United States v. Tateo, 214 F.Supp. 560, 565 (S.D.N.Y.1963).

33. Ibid. Cf. Haley v. State of Ohio, 332 U.S. 596, 601, 603, 68 S.Ct. 302, 92 L.Ed. 224 (1948) (concurring opinion).

34. United States v. Tateo, 214 F.Supp. 560, 565 (S.D.N.Y.1963). Cf. Haley v. State of Ohio, 332 U.S. 596, 601, 603–605, 68 S.Ct. 302, 92 L.Ed. 324 (1948) (concurring opinion).

35. As to temporary insanity and lack of criminal intent, see People v. De Francesco, 20 Misc.2d 854, 193 N.Y.S.2d 963, 966 (Sup.Ct.1959), where it was said that "one is * * * excused from criminal liability as an insane person [if] * * * at the time of the commission of the alleged criminal act he was laboring under such defect of reason as either not to know the nature and quality of the act * * * or not to know that the act was wrong." Cf. People v. Codarre, 20 A.D.2d 98, 245 N.Y.S.2d 81, 85–86 (2d Dep't 1963), aff'd, 14 N.Y.2d 370, 251 N.Y.S.2d 676, 200 N.E.2d 570 cert. denied, 379 U.S. 883, 85 S.Ct. 153, 13 L.Ed.2d 89 (1964). See also People v. Caruso, 246 N.Y. 437, 159 N.E. 390 (1927). As to self defense, see N.Y.Pen.Law § 1055; People v. Coleman, 7 A.D.2d 155, 180 N. Y.S.2d 978, 980 (4th Dep't 1959).

36. See United States v. Tateo, 214 F.Supp. 560, 564 (S.D.N.Y.1963).

recognized even by the prosecution in the reduced plea certificate.[37]

Petitioner first considered surrendering his right to trial and his defenses when his counsel informed him of the proposed reduction in the charge from murder to manslaughter, and that if he pleaded thereto the judge was agreeable to a sentence not to exceed ten years. As against the proffered sentence his lawyer stressed a possible term of from forty years to life in the event of conviction on the second degree murder charge. Then followed the chambers conference at which the judge made the express promise to the defendant. That it induced the plea cannot be gainsaid. To deny the compelling force of the promise is to deny the reality of experience.

The unequal positions of the judge and the accused, one with the power to commit to prison and the other deeply concerned to avoid prison, at once raise a question of fundamental fairness. When a judge becomes a participant in plea bargaining he brings to bear the full force and majesty of his office. His awesome power to impose a substantially longer or even maximum sentence in excess of that proposed is present whether referred to or not. A defendant needs no reminder that if he rejects the proposal, stands upon his right to trial and is convicted, he faces a significantly longer sentence. One facing a prison term, whether of longer or shorter duration, is easily influenced to accept what appears the more preferable choice.[38] Intentionally or otherwise, and no matter how well motivated the judge may be, the accused is subjected to a subtle but powerful influence.[39] A guilty plea predicated upon a judge's promise of a definite sentence by its very nature does not qualify as a free and voluntary act. The plea is so interlaced with the promise that the one cannot be separated from the other; remove the promise and the basis for the plea falls.

A judge's prime responsibility is to maintain the integrity of the judicial system; to see that due process of law, equal protection of the laws and the basic safeguards of a fair trial are upheld. The judge stands as the symbol of even-handed justice, and none can seriously question that if this central figure in the administration of justice promises an accused that upon a plea of guilty a fixed sentence will follow, his commitment has an all-pervasive and compelling influence in inducing the accused to yield his right to trial. A plea entered upon a bargain agreement between a judge and an accused cannot be squared with due process requirements of the Fourteenth Amendment.[40]

---

37. The certificate reads:
"It appears that during the preparation of the evening meal defendant spilled some hot water on his wife's arm. As a result she became angry and attacked him with a hammer apparently striking him at least once. She thereupon attacked him according to his version of the incident with a knife. In attempting to disarm her he received slashes across the hand with the knife. It appears that the defendant was successful in securing the knife and subsequently stabbed the woman several times. The infliction of the wounds caused death. The circumstances surrounding the homicide indicate that defendant may have lost his sense of reason during the fracas, and as he puts it, 'he blacked out.'"

38. Cf. Bram v. United States, 168 U.S. 532, 547, 18 S.Ct. 183, 42 L.Ed. 568 (1897).

39. Cf. United States v. Tateo, 214 F.Supp. 560, 566 (S.D.N.Y.1963).

40. See United States ex rel. McGrath v. LaVallee, 319 F.2d 308, 319, 322 (2d Cir. 1963) (dissenting opinion); Shelton v. United States, 246 F.2d 571, 577, 579–580 (5th Cir. 1957), rev'd on confession of error by Solicitor General, 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579 (1958) (dissenting opinion); United States v. Tateo, 214 F.Supp. 560, 566–567 (S.D. N.Y.1963); People v. Sullivan, 276 App. Div. 1087, 96 N.Y.S.2d 266 (2d Dep't 1950). Cf. People v. Farina, 2 N.Y.2d 454, 161 N.Y.S.2d 88, 141 N.E.2d 589 (1957), affirming 2 A.D.2d 776, 154 N.Y. S.2d 501 (2d Dep't 1956). "A guilty plea, if induced by promises * * * is void." Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed. 2d 473 (1962). Accord, Scott v. United

That the defendant himself engaged in plea bargaining to the extent that he sought and obtained judicial assurance of a fixed sentence as against the risk of conviction upon a trial, with the prospect of a longer sentence, does not stamp the plea as voluntary, since the plea is always hinged to the judicial promise. It does not follow that a plea is voluntary "simply because [it] * * * is the product of a sentient choice." [41] The fact that the defendant bargained for a fixed term rather than risk trial did not mean he was free from duress or was exercising a reasoned choice.[42] " 'Conduct under duress involves a choice' * * * and conduct * * * not leaving a free exercise of choice is the product of duress as much so as choice reflecting physical constraint." [43] A plea, no less than a confession, "is voluntary in law if, and only if, it was, in fact, voluntarily made." [44]

It may well be, as has been suggested, that voluntary, as distinguished from coercive, bargaining between the prosecutor and the defendant has been sanctioned by propriety and practice [45]—in some measure they deal at arm's length. But this is quite different from approbation of plea bargaining between the judge and the accused, where the disparity of positions is extremely marked. As has been urged:

"Our concept of due process must draw a distinct line between, on the one hand, advice from and 'bargaining' between defense and prosecuting attorneys and, on the other hand, discussions by judges who are ultimately to determine the length of sentence to be imposed." [46]

Finally, a bargain agreement between a judge and a defendant, however free from any calculated purpose to induce a plea, has no place in a system of justice. It impairs the judge's objectivity in passing upon the voluntariness of the plea when offered. As a party to the arrangement upon which the plea is based, he is hardly in a position to discharge his function of deciding the validity of the plea—a function not satisfied by routine inquiry, but only, as the Supreme Court has stressed, by "a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered." [47]

Entirely apart from the impact of the judge's promise upon the defendant, the guilty plea here challenged cannot stand. Due process is not satisfied by a mere showing that a plea is voluntary. Equally indispensable to a valid plea is that it be understandingly and knowingly made.[48] Due process requires that before a guilty plea is accepted the court determine that the defendant has a clear understanding of the charge, that he is aware of "possible defenses to the charges and circumstances

States, 349 F.2d 641, 643 (6th Cir. 1965) ; Luse v. United States, 326 F.2d 338, 339 (10th Cir. 1964).

41. Haley v. State of Ohio, 332 U.S. 596, 601, 606, 68 S.Ct. 302, 307, 92 L.Ed. 324 (1948) (concurring opinion).

42. See United States v. Tateo, 214 F.Supp. 560, 567 (S.D.N.Y.1963).

43. Haley v. State of Ohio, 332 U.S. 596, 601, 606, 68 S.Ct. 302, 307, 92 L.Ed. 324 (1948) (concurring opinion).

44. Ziang Sung Wan v. United States, 266 U.S. 1, 14, 45 S.Ct. 1, 3, 69 L.Ed. 131 (1924).

45. See People v. Picciotti, 4 N.Y.2d 340, 344, 175 N.Y.S.2d 32, 151 N.E.2d 191 (1958) (dictum). See generally United

States v. Tateo, 214 F.Supp. 560, 566 n. 19 (S.D.N.Y.1963)

46. United States ex rel. McGrath v. LaVallee, 319 F.2d 308, 319 (2d Cir. 1963) (dissenting opinion).

47. Von Moltke v. Gillies, 332 U.S. 708, 724, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948). Accord, United States v. Lester, 247 F.2d 496, 500 (2d Cir. 1957).

48. See Smith v. O'Grady, 312 U.S. 329, 334, 61 S.Ct. 572, 85 L.Ed. 859 (1941) ; Munich v. United States, 337 F.2d 356, 359 (9th Cir. 1964) ; Kadwell v. United States, 315 F.2d 667, 669 (9th Cir. 1963) ; United States v. Davis, 212 F.2d 264, 267 (7th Cir. 1954). See also Fed.R.Crim.P. 11, which has been said to have a "constitutional foundation." Munich v. United States, supra at 359 n. 1.

in mitigation thereof," [49] and his admission of guilt is without reservation. A judge is not relieved of his duty to ascertain that the plea was understandingly and knowingly made because the defendant is represented by counsel.[50]

The circumstances attendant upon the entry of petitioner's plea repel any claim that it was understandingly and knowingly made. His answers in response to the questions by the court and the prosecutor immediately prior to the entry of the guilty plea do not clearly establish that he acknowledged guilt without reservation; quite the contrary, they reveal a challenge to the charge—an attempt to assert a plea of self defense or insanity—and yet without further inquiry by the court, the plea was summarily accepted.[51] The record here speaks for itself:

"[ASSISTANT DISTRICT ATTORNEY]: [T]he defendant became involved in an argument with his so-called common law wife * * * as a result of which I believe he spilled some hot water on her and she became annoyed. Thereafter the argument grew worse and I understand there was some question relative to a hammer being used by the wife, which, of course, as your Honor knows, would be a matter of proof—and thereafter he tried to defend himself when she produced a knife, and again to further defend himself he was cut and became enraged, apparently, after which he disarmed her and thereafter stabbed her with a knife several times, after which, of course, the woman died.

"BY THE COURT:

* * * * * *

"Q Did you use a knife in that fashion—you did stab her?

"A Not that I know that I stab her.

"Q But you were in a fight with her?

"A Yes, I remember I was in some kind of a fight; I know I was cut myself.

"Q You were the only one there?

"A I think so.

"Q Don't you know?

"A I don't know for sure, but I think so.

"Q You used the knife, didn't you?

"A Not to my knowledge.

"BY MR. McGUIRE:

"Q Now, Mr. Elksnis, you were engaged in an argument with your wife, is that right? **You remember** that? You had a fight with your wife?

"A I remember that, yes.

"Q And do you remember that she came at you with a hammer?

"A Yes, I was hit by the hammer.

"Q Was that hammer in your wife's hands?

"A Yes.

"Q After you were hit by the hammer did you then try to protect yourself?

"A Yes, I did.

"Q And then there was a knife produced?

"A Yes, she cut me in my hand.

"Q After she cut you with the knife, did you do something with the knife?

"A I was trying to get the knife.

"Q We want you to be certain about that. Did you try to get the knife away from your wife?

"A Yes, I was dodging that knife; I recall that, and I recall I twisted her arm.

---

49. Von Moltke v. Gillies, 332 U.S. 708, 724, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948). Accord, United States v. Lester, 247 F.2d 496, 500 (2d Cir. 1957).

50. See United States v. Lester, 247 F.2d 496, 500 (2d Cir. 1957); United States v. Davis, 212 F.2d 264, 267 (7th Cir. 1954).

51. Cf. Kadwell v. United States, 315 F.2d 667, 668–689 (9th Cir. 1963); Gearhart v. United States, 106 U.S.App.D.C. 270, 272 F.2d 499 (1959); Poole v. United States, 102 U.S.App.D.C. 71, 250 F.2d 396, 400–401 (1957); United States v. Lester, 247 F.2d 496 (2d Cir. 1957).

"Q And you got the knife?

"A I think I did.

"Q And thereafter did you remember that you moved it toward your wife or made a thrust at your wife?

"A I don't know; something exploded in my head and it was black all around, a complete black.

"Q Was there anybody else with you?

"A Not when the argument started.

"Q Mr. Elksnis, are you stating to the Court that you did not do this?

"A No, I mean it is not in my mind or in my knowledge that I did.

"Q Is it your belief that you did do it?

"A I believe later, after the evidence was shown—there was blood on my clothes and it could not have been anybody else and I have come to the conclusion it must have been me.

"THE COURT: We will accept the plea.

"(Pedigree was then taken and the defendant remanded.)"

 From the foregoing it cannot be said that the defendant made a deliberate and measured choice [52]—that he entered his plea because in fact he was guilty or because he was compromising his claimed defenses in exchange for the sentence he then believed would be imposed upon him as previously agreed. The forthwith acceptance of the guilty plea without a searching inquiry [53] as to the merits of the alleged self defense plea and the defendant's claim that "something exploded in my head," stamp the plea as one not understandingly and knowingly made and this ground, too, requires that it be declared void.

The writ is sustained unless, within ten (10) days from the date hereof, the state on its own motion vacates the judgment of conviction and reinstates the petitioner's original plea of not guilty, failing which petitioner is discharged from custody.

The foregoing shall constitute the Court's Findings of Fact and Conclusions of Law.

---

**52.** United States v. Tateo, 214 F.Supp. 560, 567 (S.D.N.Y.1963).

**53.** See Von Moltke v. Gillies, 332 U.S. 708, 724, 68 S.Ct. 316, 92 L.Ed. 309 (1948).