THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. REGINALD BATTLE, Appellant.— In a *coram nobis* proceeding to vacate a judgment of the former County Court, Kings County, rendered June 1, 1962 (a judgment of resentence was rendered December 15, 1967), defendant appeals from an order of the Supreme Court, Kings County, dated March 26, 1968, which denied the application. Order reversed, on the law and the facts, judgment of resentence and guilty plea vacated, and case remanded to the Criminal Term for further proceedings not inconsistent herewith. Defendant pleaded guilty to rape in the first degree in satisfaction of an indictment charging that and other crimes. On June 1, 1962, he was committed to Elmira Reception Center with a sentence of one day to life. On November 10, 1967, that sentence was vacated and a psychiatric examination, pursuant to section 2189-a of the former Penal Law, was ordered. On December 15, 1967, defendant was resentenced to a

term of 10 to 20 years, *nunc pro tunc* as of June 1, 1962. About the time of the resentence procedure, defendant made this application for *coram nobis* relief, alleging that his guilty plea had been coerced or induced by a sentence promise by the court. After a hearing in March, 1968, the court, which had also been the sentencing court, in an oral decision from the bench said that when the sentence was originally imposed "the court did not recollect the promise that the court had made to the defendant of ten to twenty years." The court denied the application on the merits on the ground there was no evidence of any coercion by anyone to induce defendant to plead guilty, observing also that the sentence had been corrected to that which had been promised. Recently we said in *People* v. *Stevenson* (32 A D 2d 662, 663), "We believe that in any case subject to the discretionary punishment of one day to life under section 2189-a of the former Penal Law [of 1909] a guilty plea entered upon the promise or assurance of the court that such punishment will not be imposed may not stand". We were explicit in *Stevenson* that in *any* case in which the discretionary punishment of one day to life is applicable (cf. new Penal Law, § 5.05) a promise not to invoke that sentence may not be made. It makes no difference whether the defendant is coerced or induced to plead guilty by such a promise; the plea may not stand. Section 2189-a, as in effect at the time of defendant's original sentence, read: "No person convicted of a crime punishable in the discretion of the court with imprisonment for an indeterminate term, having a minimum of one day and a maximum of his natural life, shall be sentenced until a psychiatric examination shall have been made of him". We perceive the provisions for the discretionary punishment in sex-related cases to be an expression of public policy. Whatever may be the propriety of plea bargaining between a court and a defendant in relation to other crimes (cf. *United States ex rel. Elksnis* v. *Gilligan,* 256 F. Supp. 244, 255), it seems to us that such practice should not be approved in those cases where the one day to life sentence may be invoked. The discretion authorized should not have been exercised in advance of the examination required by section 2189-a; nor should it have been bargained away. Christ, P. J., Hopkins and Munder, JJ., concur; Brennan and Rabin, JJ., dissent and vote to affirm the order, with the following memorandum: Appellant was sentenced on his plea of guilty to rape in the first degree to Elmira Reception Center for an indeterminate term of one day to life. That sentence was imposed on June 1, 1962. In 1967, appellant instituted the instant *coram nobis* application, alleging an unkept sentence promise by the trial court. Shortly before the *coram nobis* hearing was held at bar, the original sentencing court, upon an independent application, reviewed the 1962 plea minutes and (1) vacated and set aside appellant's 1962 sentence and (2) ordered that appellant be examined pursuant to section 2189-a of the former Penal Law, which provided: "No person convicted of a crime punishable in the discretion of the court with imprisonment for an indeterminate term, having a minimum of one day and a maximum of his natural life, shall be sentenced until a psychiatric examination shall have been made of him and a complete written report thereof shall have been submitted to the court." Appellant had not been properly examined pursuant to said section in 1962. Upon completion of the psychiatric examination and filing of the psychiatric report which certified him as sane, appellant was resentenced to 10 to 20 years *nunc pro tunc* as of June 1, 1962. The resentence was consistent with the court's originally promised sentence. In our view, on these precise facts the application for a writ of error *coram nobis* was properly denied. The majority maintains that our decision in *People* v. *Stevenson* (32 A D 2d 662) is controlling. We think not. In *Stevenson* the psychiatric report included the finding that the defendant therein

was found to be a person unable to control his sexual and hedonistic impulses and "unable to profit by experience in spite of punishment"; and the express recommendation was that he be treated "in a closed custodial environment". In such a case, the community's safety is actually endangered when a sentence other than a one day to life sentence is agreed upon, because it reduces the safeguards against the defendant's being dangerous to society upon release. Where a psychiatric report reveals, as in *Stevenson,* that the defendant is a dangerous person with no control over his abnormal sexual and hedonistic impulses, the dangers to society resulting from a stipulated sentence in advance of a section 2189-a examination are obvious and the reasoning in *Stevenson* is fully applicable. However, at bar, the psychiatric report presented to the court shortly *before* defendant was resentenced in accordance with the promised sentence indicated that defendant was sane and that there was no clinical evidence of his being a sexual deviate. It also included the statement: "It is felt that chances for repetition of the crime are almost nil." Based on such a report, which in this case was available to the court *prior to* resentence, it is our view that there was no foreseeable danger to the community in imposing the promised sentence of 10 to 20 years. Since the psychiatric findings were such as to fully justify the term of the resentence, it cannot be said that the court abused its discretion or bargained away the community's interest.