UNITED STATES of America ex rel.
Charles KENNY, Petitioner-
Appellant,

v.

Hon. Harold W. FOLLETTE, Warden, Green Haven Prison, Stormville, New York, Respondent-Appellee.

No. 166, Docket 31699.

United States Court of Appeals Second Circuit.

Argued Nov. 7, 1968.

Decided March 25, 1969.

Gretchen White Oberman, New York City (Anthony F. Marra, New York City, on the brief), for petitioner-appellant.

Amy Juviler, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen., of the State of New York and Samuel A. Hirshowitz, First Asst. Atty. Gen., on the brief), for respondent-appellee.

Before LUMBARD, Chief Judge, and MEDINA and WATERMAN, Circuit Judges.

LUMBARD, Chief Judge:

This appeal by a state prisoner concerns the propriety of the district court's finding, after a hearing, that appellant had waived his right to contest the validity of a predicate New York State conviction used in sentencing him as a second felony offender.

Charles Kenny is presently incarcerated pursuant to a judgment of the Kings County Supreme Court, rendered on October 27, 1965, convicting him on his plea of guilty to second degree robbery and sentencing him to a term of 7½ to 10 years as a second felony offender. The predicate felony conviction was also rendered in Supreme Court, Kings County, in February, 1962, convicting him on his plea of guilty to first degree manslaughter and sentencing him to 3–5 years imprisonment. It is this 1962 conviction which Kenny now attacks as unconstitutional, alleging that his guilty plea was involuntary because the sentencing Judge failed to keep a promise respecting his sentence. After a hearing in the Southern District, at which Kenny and the other people involved testified, Judge Tenney concluded that Kenny had deliberately bypassed orderly state procedures for raising this claim and therefore was not entitled to relief. As we agree with the district court, we affirm the order denying the writ.

As revealed at the district court hearing and in the state court opinions, Kenny and two co-defendants were indicted in 1961 for first degree murder. All three pleaded guilty to reduced charges: Kenny, because of his greater culpability, to manslaughter I; the other two to manslaughter II. Prior to the entry of the pleas, on December 4, 1961, the presiding Judge, Judge Barshay, agreed "that all three defendants will receive the same treatment on sentencing day." At sentencing, on February 5, 1962, one of Kenny's co-defendants, Murphy, was given a suspended sentence; the other co-defendant, McLoughlin, was given a 3–5 year prison term; and Kenny was given a 3–10 year prison term. When the prior agreement was brought to Judge Barshay's attention, he resentenced Kenny to the same term as McLoughlin, 3–5 years.

Kenny did not move to withdraw his plea, nor did he appeal his conviction, though his counsel advised him to do so. Thereafter, he sought *coram nobis* in Kings County Supreme Court, claiming that he was improperly sentenced. After a hearing, Judge Barshay denied relief on the ground that the probation reports made it clear that Murphy deserved special leniency, and that "it would have been as unjust to imprison Murphy as it would have been not to imprison Kenny and McLoughlin." People v. Kenny, 236 N.Y.S.2d 911 (1962). The New York Appellate Division affirmed without opinion, 19 A.D.2d 948, 245 N.Y.S.2d 320, and leave to appeal to the New York Court of Appeals was denied.

Kenny then sought a writ of habeas corpus in the Southern District. On

July 24, 1964, Judge Weinfeld ordered a hearing and assigned counsel to represent Kenny. United States ex rel. Kenny v. Fay, 232 F.Supp. 899 (S.D.N.Y. 1964). Kenny, however, wrote to Judge Weinfeld, stating that if the Federal court could merely vacate the guilty plea, leaving him subject to trial on the original indictment, he wished to withdraw his petition. Judge Weinfeld accordingly ordered the petition withdrawn, without prejudice.

No further action was taken in the state court. Kenny was released on parole in November, 1964, but thereafter three indictments were filed against him. In October, 1965 he pleaded guilty to robbery second degree to cover all three indictments. He was sentenced as a second felony offender, pursuant to New York Penal Law, McKinney's Consol.Laws, c. 40, § 1943, to 7½ years to 10 years.[1] At that time he made no objection to the use of the 1962 conviction as a predicate for second offender treatment. So far as we are advised, he has never attacked his second felony conviction in the state courts.

■ In September, 1966, Kenny brought the present application for a writ of habeas corpus in the Southern District, alleging the unconstitutionality of his 1962 conviction and therefore the invalidity of its use as a basis for multiple offender treatment. A hearing was held, wherein Kenny was represented by retained counsel. Kenny testified, and also called Harry Blum, his 1962 trial counsel. Respondent called Judge Barshay and the court stenographer from the 1962 sentencing. After the hearing, the district court held:

"Taking all relevant factors into consideration, this seems to be one of those relatively rare cases mentioned in Fay v. Noia, supra [372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837], where

'a suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks,' and where petitioner 'has deliberately by-passed the orderly procedure of the state courts.' All of petitioner's actions indicate an intelligent knowledge of the law and a well-considered attempt to avoid its consequences."

We think that the district court's conclusion, far from being clearly erroneous, is amply supported by the record.

First, Kenny made no attempt to withdraw his 1961 plea, although Judge Barshay testified at the habeas corpus hearing that if such a request had been made, he would have granted it and gone on with Kenny's trial. Secondly, Kenny failed to appeal this conviction, although his lawyer advised him to do so.

Third, in 1964, after a hearing had been ordered by Judge Weinfeld on Kenny's application for a writ of habeas corpus, Kenny sought leave to withdraw the application. At the hearing below, Kenny stated the reason for this action:

"Well, after having served almost 4 years out of that sentence, I was a little scared to go back down there to stand trial for murder.

Q. So you just decided that it would be better to let the whole thing drop? A. Right.

Q. Forget all about it? A. That's what I had planned to do, yes."

Finally, in October, 1965, Kenny pleaded guilty to robbery in the second degree and was sentenced to 7½ to 10 years as a second felony offender. At the time the plea was made, Kenny was told that his 1962 conviction could be used as a basis for multiple offender treatment. At sentencing, he was told that he could challenge the validity of the earlier conviction as a predicate for multiple offender treatment, as provided

---

1. As a first offender, Kenny could have been sentenced up to 15 years. Former New York Penal Law § 2127. As a second offender, he was subject to a minimum sentence of 7½ years and a maximum of 30 years. New York Penal Law §§ 1941 and 2127. Thus it is apparent that, as in 1962, Kenny was treated leniently at sentencing in 1965, receiving as a second offender less than he could have received as a first offender.

in § 1943. He did not do so. At the district court hearing, Kenny's explanation was that he "did not feel like it at that time."

▮ Section 1943 specifically provides that failure to challenge the prior conviction at the time of sentencing as a multiple offender "shall constitute a waiver * * * of any allegation of unconstitutionality unless good cause be shown for [the] failure to make timely challenge." The purpose of this requirement is to have the validity of the predicate conviction tested at the time it is used as a basis for multiple offender treatment rather than years later in some state procedure or in a federal habeas corpus proceeding when the necessary witnesses and records may be unavailable. See 1964 New York State Legislative Annual, 57, 514.

Kenny now claims that there was no such waiver as specified in § 1943 because, in light of his prior *coram nobis* proceeding raising substantially the same question, the § 1943 procedure was unavailable to him. To support this contention, he cites People v. Jefferson, 29 A.D.2d 681, 287 N.Y.S.2d 605 (2nd Dept.1968). That case involved a petitioner who was sentenced as a second felony offender in 1958, prior to the enactment of the relevant portions of § 1943. The petitioner had unsuccessfully attacked the predicate (1949) conviction by way of *coram nobis* in 1964; in 1966, he sought to invoke the § 1943 procedure by a motion to resentence. The Appellate Division, Second Department, held that where a petitioner has, *subsequent* to his sentence as a multiple offender, litigated the constitutionality of the predicate conviction by way of *coram nobis,* he cannot relitigate the very same claim under the guise of retroactive application of the 1964 amendment to § 1943. In dictum, the court additionally stated:

> "The plain objective of the 1964 amendment of [§ 1943] is the extension to a defendant of the procedural right to challenge the constitutionality of a predicate conviction at the time he is arraigned as a multiple offender, provided that the constitutionality of the prior conviction has not been adjudicated with respect to the objection raised by defendant at the time that he is so arraigned."

▮ Although we doubt that the New York Court of Appeals would adopt the view that the § 1943 procedure is foreclosed by a *coram nobis* application prior to sentencing, cf. People v. Jones, 17 N.Y.2d 404, 271 N.Y.S.2d 240, 218 N.E. 2d 291 (1966), we hold that Kenny cannot benefit by his argument even if his view of the law is correct. First, Kenny was specifically asked at the time he was sentenced as a second felony offender if he wished to challenge the predicate conviction; having failed to do so, he should not now be heard to contend that New York law would not permit it. Second, Kenny does not claim that he failed to invoke the § 1943 procedure for the reason he now urges; rather he admits that he just "did not feel like it." Third, as pointed out by Judge Weinfeld when he ordered a hearing in 1964 and by Judge Tenney when he ordered the hearing below, the New York court, in denying Kenny's *coram nobis* application, apparently did not pass upon his fundamental charge that his guilty plea was not voluntary. Thus it is likely that even if in some cases a prior *coram nobis* application will preclude a challenge under § 1943, such would not have been the case here.

In sum, Kenny's failure to challenge the 1962 conviction when he was sentenced as a second offender, after being asked if he desired to do so—like his failure to appeal the 1962 conviction and his withdrawal of the first habeas corpus petition after Judge Weinfeld had ordered a hearing—demonstrates that he thought he was well off accepting his unusually lenient 1962 sentence and leaving things as they were, even though Judge Barshay had not performed his promise.

In Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 849, 9 L.Ed.2d 837 (1963), the Supreme Court held that the district court may in its discretion deny all relief to "a habeas applicant [who], after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate by-passing of state procedures." The district court below, after a full and fair hearing, held that Kenny's actions throughout this unnecessarily protracted litigation amounted to such a deliberate by-passing. That holding, as shown above, is clearly supported by the record.

The order of the district court denying the writ is affirmed.

WATERMAN, Circuit Judge (dissenting and concurring):

I concur in affirming the district court order refusing to sustain the writ. I agree with the judge below and with my brothers that appellant intentionally abandoned his right to challenge the validity of his February 1962 conviction for first degree manslaughter even though the conviction was obtained in violation of due process of law. My brothers appear to be holding, however, that appellant waived his constitutional right in four different ways. I would hold that there had been a waiver in only one of them and therefore I consider it necessary for me to set forth my individual views.

Based upon the testimony that was elicited from the state trial judge and from petitioner's state trial counsel at the evidentiary hearing below the district court found that there had been a breach of a judicial promise made to petitioner in connection with petitioner's plea of guilty and the judicial acceptance of that plea. It is well-settled that when a plea of guilty is entered in connection with a judge's promise relative to the imposition of a sentence it violates our concepts of fundamental fairness not

to strike off the plea if the promise is not kept. United States ex rel. Elksnis v. Gilligan, 256 F.Supp. 244, 249, 253–254 (S.D.N.Y.1966); see Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); Waley v. Johnston, 316 U.S. 101, 104, 62 S.Ct. 964, 86 L.Ed. 1302 (1942); Walker v. Johnston, 312 U.S. 275, 286, 61 S.Ct. 574, 85 L.Ed. 830 (1941); Kercheval v. United States, 274 U.S. 220, 224, 47 S.Ct. 582, 71 L.Ed. 1009 (1927); United States ex rel. McGrath v. LaVallee, 319 F.2d 308, 311, 314 (2 Cir. 1963).

Moreover, it is no less a violation of due process when the judge breaks his promise for some "legitimate" compelling reason, e. g., United States ex rel. Elksnis v. Gilligan, *supra*, 256 F.Supp. at 249–250. Of course, when new facts are discovered the trial judge is not bound to fulfill a promise he now considers manifestly unjust, but in that event fundamental fairness requires that the judge should not wait for a defense request but should forthwith strike off the guilty plea himself and reinvest the defendant with all the constitutional rights accorded him under our accusatory system of criminal justice. United States ex rel. Elksnis v. Gilligan, *supra* at 249. It is not enough for the judge to permit the plea to stand and then to say that if the defendant had sought to withdraw his guilty plea after the imposition of a more severe sentence than agreed upon the judge would have granted the request. The burden of insuring that a guilty plea is entirely voluntary is upon the court that has repudiated its prior promise; it is not upon the defendant who has been unfairly induced to enter the plea.

As petitioner's 1962 conviction has never been set aside as unfairly obtained the sole issue before us is whether this case is one of those relatively rare cases mentioned by the United States Supreme Court in Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), in which a "suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks."

Fay v. Noia explicitly recognized that a federal judge has a limited discretion to deny any relief to a state prisoner habeas corpus applicant "who has *deliberately by-passed* the orderly procedure of the state courts and in so doing has forfeited his state court remedies." 372 U.S. at 438, 83 S.Ct. at 849. This concept of waiver is explained in the following passage from the Court's opinion:

> But we wish to make very clear that this grant of discretion is not to be interpreted as a permission to introduce legal fictions into federal habeas corpus. The classic definition of waiver enunciated in Johnson v. Zerbst, 304 U.S. 458, 464 [58 S.Ct. 1019, 1023, 82 L.Ed. 1461]—"an intentional relinquishment or abandonment of a known right or privilege"— furnishes the controlling standard. If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate by-passing of state procedures, then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his federal claims on the merits—though of course only after the federal court has satisfied itself, by holding a hearing or by some other means, of the facts bearing upon the applicant's default. Cf. Price v. Johnston, 334 U.S. 266, 291 [68 S. Ct. 1049, 1063, 92 L.Ed. 1356]. At all events we wish it clearly understood that the standard here put forth depends on the considered choice of the petitioner. * * * 372 U.S. at 439, 83 S.Ct. at 849.

Under this standard the question of whether a habeas applicant has abandoned his right to have a federal court hear his objections to his state detention and to obtain relief depends on the particular facts of his case. 372 U.S. at 440, 83 S.Ct. 822.

Turning to the facts at bar, my colleagues suggest four grounds which they hold provide ample support for the district court's determination that petitioner deliberately waived available New York state procedural remedies which he could have utilized to challenge the constitutionality of his 1962 conviction. I do not agree with them that their first three grounds, whether individually or collectively considered, constitute effective waivers within the guidelines of Fay v. Noia. First, an effective waiver is suggested because Kenny failed to move to withdraw his guilty plea after he was sentenced, a motion Judge Barshay testified at the habeas hearing he would have granted had it been made. As I have already stated, when it appears that a guilty plea may have been induced by a judicial promise which is not to be kept, the burden is on the trial judge to strike off the plea or, at the very least, he must instruct the defendant that his plea may be withdrawn. Here the petitioner was not so instructed and so his failure to make the motion on his own initiative does not disentitle him to federal habeas corpus relief. Second, Kenny's failure to appeal the 1962 conviction so obtained, although counsel advised him to appeal, does not measure up to the Fay v. Noia standard. If petitioner's 1962 conviction for manslaughter had been overturned on appeal he could have been charged with first degree murder and tried on that charge. Thus Kenny's situation was similar to that faced by Noia.[1]  Neither Noia nor

---

1. In Fay v. Noia the Court stated:
    * * * Under no reasonable view can the State's version of Noia's reason for not appealing support an inference of deliberate by-passing of the state court system. For Noia to have appealed in 1942 would have been to run a substan-

tial risk of electrocution. His was the grisly choice whether to sit content with life imprisonment or to travel the uncertain avenue of appeal which, if successful, might well have led to a retrial and death sentence. See, e. g., Palko v. Connecticut, 302 U.S. 319, 58 S.Ct.

Kenny could relinquish federal habeas corpus rights by failing to appeal. Third, the majority's position that Kenny's application to Judge Weinfeld for leave to withdraw his prior habeas corpus petition without prejudice amounted to a strategic abandonment of his constitutional claim is as inadequate a reason to deny Kenny relief as the two other grounds mentioned. The only logical inference that can be drawn from this request, the very inference noted by the district court below in granting the evidentiary hearing he held, is that petitioner was aware of the grave consequences to him, that of having to defend a possible first degree murder charge upon retrial, if he successfully prosecuted the habeas application he asked leave to withdraw. This is the precise dilemma which the Court in Fay v. Noia recognized criminal defendants are sometimes confronted with and which prompted the Court to hold that where the convicted one is faced with a "grisly choice" it is unfair to require him to pursue a state remedy in order to obtain a right to seek federal habeas corpus.[2] The injustice of compelling an adjudication of an application for a federal habeas corpus writ by denying the right to a non-prejudicial withdrawal of the application is no less evident. In both situations the risk at a retrial of ultimately receiving a stiffer penalty may lurk in the background of an individual's decision to forego a challenge to the legality of his detention, and, if so, the

remedies of federal habeas corpus must remain open to him should he later decide to expose himself to the risk. Thus petitioner's present election to chance the consequences to him of a new trial by instituting the within application for a writ of habeas corpus is not foreclosed by his withdrawal of a prior application which sought the same relief. In summary, if the decision of the majority had rested only upon these three grounds I would have been compelled to dissent from affirming the district court's failure to sustain the writ. I have no reservations, however, in agreeing with my brothers that the fourth ground they rely upon to affirm was a demonstrable intentional abandonment of an available state procedure when petitioner did not have in mind that he had a grisly choice to make.

Pursuant to the requirements of § 1943 of the New York Penal Law Kenny was specifically told when sentenced as a multiple offender in 1965 that he could challenge the validity of his predicate 1962 conviction.[3] This he failed to do. The court below found as a fact that the petitioner in his testimony below negated any presumption that he was afraid that if his prior conviction were overturned it would leave him subject to a possible first degree murder trial for he there stated that his reason for not attacking the predicate conviction was that he "just didn't feel like it at the time." I agree with my brothers that this statement by petitioner amply supports the

---

149, 82 L.Ed. 288. He declined to play Russian roulette in this fashion. This was a choice by Noia not to appeal, but under the circumstances it cannot realistically be deemed a merely tactical or strategic litigation step, or in any way a deliberate circumvention of state procedures. * * * 372 U.S. at 439–440, 83 S.Ct. at 849.

2. See note 1, *supra.*

3. Section 1943 of the New York Penal Law, as amended April 10, 1964, provides in pertinent part:

  *   *   *   *   *

An objection that a previous conviction was unconstitutionally obtained

may be raised at this time [when defendant is informed by the court of the allegations of an information accusing him of such prior conviction] and the court shall so inform the person accused. Such an objection shall be entered in the record and shall be determined by the court * * *. *The failure of the person accused to challenge the previous conviction in the manner provided herein shall constitute a waiver on his part of any allegation of unconstitutionality* unless good cause be shown for his failure to make timely challenge. * * * (Emphasis supplied.)

district court's determination that petitioner's failure to assert his claims in accordance with New York law was a deliberate choice that was not induced by any apprehension of a retrial and a greater penalty.