**UNITED STATES ex rel. William J. BURKE, Petitioner,**

v.

**Vincent R. MANCUSI, Warden of Attica State Prison, Attica, New York, Respondent.**

**No. 70 Civ. 3374.**

United States District Court, S. D. New York.

April 15, 1971.

On Application for Certificate of Probable Cause June 8, 1971.

Robert B. Fiske, Jr., New York City, for petitioner; David C. Oxman, of counsel.

Louis J. Lefkowitz, Atty. Gen., New York City, for respondent; John G. Proudfit, Asst. Atty. Gen., of counsel.

LASKER, District Judge.

Petitioner seeks a writ of habeas corpus, alleging that he was induced to give evidence against himself on the basis of promises of a limited sentence made by the District Attorney's Office, that the promises were not kept, and that his guilty plea to the indictment against him was therefore involuntary. Petitioner further asserts that he was inadequately represented by counsel.[1]

On this application he seeks to vacate the judgment of conviction based upon his guilty plea, and a direction that, on any retrial for the offenses in the indict-

---

1. While petitioner raised this point initially in his papers submitted pro se, once counsel appeared to represent him the issue was not pursued. Petitioner's counsel in the proceedings complained of, Martin Erdmann, Esq., has been associated with the New York Legal Aid Society for 25 years. (Transcript of Hearing, December 9, 1970, at 90). As Richard H. Wynn, Esq., testified, "Mr. Erdmann is one of the most competent attorneys that I have ever met in my life, that's an opinion not only of myself but of every other member of the bar that has ever practiced in the criminal courts in the State of New York." (*Id.* at 74–75). Petitioner himself, on cross-examination, did concede that Erdmann put the matter of the promises fully on the record. (Id. at 62–64), and never asserted in his testimony before this court that Erdmann gave incompetent advice.

In any event, as respondent argues in his initial reply papers, this contention "has not as yet been raised in the state courts and * * * a reading of the proceeding [the plea and sentencing] clearly indicate[s] that they did not constitute 'a farce and a mockery of justice' United States v. Tribote, 297 F.2d 598, 601 (2d Cir. 1961). See Chambers v. Maroney [400 U.S. 856, 91 S.Ct. 23, 27 L.Ed.2d 94], 38 U.S.L.W. 4547 (June 22, 1970)." (Affidavit of John G. Proudfit, 70 Civ. 3373, sworn to September 15, 1970, at 2).

ment here, the State of New York be precluded from using any evidence which resulted from his cooperation.

While the application was initiated pro se, the petitioner requested that the court appoint counsel, and Robert B. Fiske, Jr., Esq., consented to represent petitioner pro bono publico. In order to clarify the factual issues raised here, a full evidentiary hearing was held. 28 U.S.C.A. § 2243; Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).[2]

## THE FACTS

In July of 1966, while petitioner was incarcerated (bail not having been met) under a 1965 indictment for conspiracy and extortion, he was approached by officers of the New York Police Department seeking his cooperation in providing information on certain "shakedown" activities allegedly involving a man named Sherman Kaminsky and officers of the police departments in Chicago and New York. Petitioner expressed a willingness to cooperate and requested that he be provided with an attorney. The New York District Attorney's Office secured for him the services of Martin Erdmann, Esq., of the New York Legal Aid Society.

Petitioner met with Erdmann for the first time in the office of Richard H. Wynn, Esq., an Assistant District Attorney for New York County. He there told Erdmann:

"\* \* \* the District Attorney wanted me to go with them to a few locations here in the city and locate some people that have been victimized by Kaminsky, and one in particular that I and Mr. Kaminsky were involved, and I wanted some assurance as to what the disposition of this whole thing would be before I gave any information." [sic] (Transcript of Hearing, December 9, 1970, at 24).

On July 11, 1966, the District Attorney's Office conveyed to petitioner through his attorney, Erdmann, its decision that no immunity would be given, but that (1) if petitioner cooperated in the investigation by providing information, "if any indictment were returned, as the result of my cooperation, they wouldn't be held against me." [sic] (*Id.* at 24); and (2) if the cooperation were substantial, petitioner could expect that all the New York charges "would be disposed of on the basis of a couple of misdemeanors." (*Id.*)

Petitioner then accompanied New York police officers and provided them with information as to the locations and other facts relating to certain extortions. He claimed to be unable to recall the names of the individuals victimized, but described them. Petitioner stated that his role in the extortions was that "I acted in concert, I drove the car back, Kaminsky stayed out there, and went with this individual to the bank and so forth, and I drove the car back." (*Id.* at 28).

The record established that Kaminsky and petitioner were indicted on July 19, 1966 (Indictment No. 2796–66), and that

2. Petitioner has exhausted his New York State remedies before bringing this habeas corpus application. Petitioner's guilty plea of November 21, 1966, and his sentencing of January 20, 1967 were appealed. The Appellate Division unanimously upheld the conviction, People v. Burke, 32 A.D.2d 741, 300 N.Y.S.2d 511 (1st Dept. 1969), and leave to appeal to the New York Court of Appeals was denied on September 24, 1969. Petitioner brought a coram nobis application on October 29, 1969, to (1) stay the execution of judgment, (2) vacate the judgment and sentence, and (3) vacate and set side the

plea of guilty. This application was denied, without a hearing, on November 3, 1969. It is not revealed whether the denial of the coram nobis was appealed, and if so, what the disposition has been. The Judicial Conference of the State of New York reports that petitioner on August 8, 1970 brought a coram nobis in Criminal Court in Bronx County before the Honorable W. Gladwin; no information is available as to its disposition or its relevance to the indictments challenged herein. See, also, Transcript of December 9, 1970 Hearing at 47.

the information provided by petitioner was relied upon in bringing the indictment. While there appears to be some dispute in the record whether petitioner was capable of providing further evidence such as the names of the victims or other matters, he did provide extensive information to the Federal Bureau of Investigation (Plaintiff's Exhibit No. 4 at 13) and he states that he gave the District Attorney all that he had beyond what was told to the federal authorities. Prior to entering his plea, petitioner was told by the New York police that they felt his cooperation was insufficient and that he had not given them information desired as to a specific case. (Transcript of Hearing, December 9, 1970, at 36).

On November 21, 1966, petitioner was called upon to plead to both the 1956 and the 1966 indictments. The District Attorney's Office offered to reduce the charges to attempted grand larceny in the second degree as to the 1966 indictment, and the misdemeanor of coercion as to the 1956 indictment. The cooperation which petitioner did give was a factor considered by the District Attorney's Office in making this offer. (*Id.* at 72). Petitioner then withdrew his earlier pleas of not guilty and responded to the court's inquiry as follows:

"THE COURT: Has anyone given you any promise or indication that you would be sentenced on your conviction of the misdemeanor of coercion rather than on your conviction of the felony of attempted grand larceny in the second degree in order to induce you to enter these pleas of guilty?

"THE DEFENDANT: No, your Honor."

(Plaintiff's Exhibit 3 at 5; Transcript of November 21, 1966 Guilty Plea).

Petitioner testified at the hearing on this petition that his counsel had advised him that someone from the District Attorney's Office would inform the court at sentencing that the felony indictment was the result of petitioner's cooperation and "wouldn't be held against" him (Transcript of Hearing, December 9, 1970, at 39), and further, that counsel advised him that because he would be under a federal sentence when he came up for sentences on the convictions based on his guilty pleas, the court would probably suspend the imposition of those sentences. Petitioner stated: "I don't care what the pleas are as long as the disposition is no more than two misdemeanors or a suspended sentence." (*Id.* at 63).

On January 27, 1967, the petitioner was sentenced. When asked whether or not he had any legal cause to show why judgment should not be pronounced against him on each of the indictments, petitioner replied:

"Yes, I do * * * I was originally with the District Attorney's police, and I was induced to confess in this crime, and I was given to understand that the disposition of all matters pending would be two misdemeanors. They reneged on that promise, and they haven't initiated it up to this point." (Plaintiff's Exhibit 4 at 5; Transcript of Sentencing of January 20, 1967).

Mr. Wynn then stated that no promise had been made to the defendant; that "[a]ny communications made to Mr. Burke were made through Mr. Erdmann in the first instance." (*Id.* at 5). Mr. Erdmann then read into the record his memorandum of what the District Attorney's Office had told him and he subsequently told petitioner on July 11, 1966.[3] Thereafter Mr. Wynn stated that

---

3. "MR. ERDMANN: I think I should make a record of a memorandum on July 11, 1966, in my own handwriting, after a meeting with—at which I am certain Mr. Burke was present—with Mr. Grebow and with Mr. Wynn and with certain detectives of the District Attorney's staff

—I think one of them was Detective Cody,—I am not certain. This is the memoradum which I made:

"I was asked by Assistant District Attorney Karl Grebow if I would permit him to interview William Burke with respect to co-operating with the District At-

"there is no question that such meeting took place * * * However, [Burke's] cooperation was far from substantial." (*Id.* at 7). Burke contested this characterization of his cooperation.

The court remarked that petitioner should be given an opportunity to withdraw his plea. The court observed, "I feel that the plea in this case is much too low." (*Id.* at 8). The court suggested to the Assistant District Attorney that the recommendation be made that the pleas be withdrawn and petitioner go to trial on the indictments.

Petitioner then conferred privately with his counsel, Erdmann, and decided to answer "No" to the court's repeated question whether petitioner had any legal cause for judgment not being entered.

Petitioner and his counsel testified at the hearing before me that the substance of this conference consisted of petitioner's urging that the pleas be withdrawn and counsel's statement that he had made a record of the promises and if they had merit they could be raised on appeal—as indeed they were. (Transcript of Hearing, December 9, 1970, at 63–64, 97). The record shows that during the conference between petitioner and his counsel, Assistant District Attorney Wynn had sufficient time to leave the courtroom and return. (*Id.* at 74). Petitioner characterized the con-

text in which the conference occurred as follows:

"* * * We are standing up there, and everything, and Judge Schweitzer is hollering, and you have 30 seconds to think this whole bit up. So standing up there, [I urged Erdmann that we] withdraw this plea and let's have a hearing." (*Id.* at 64).

## CONTENTIONS OF THE PARTIES

On these facts the petitioner contends that he was induced to plead guilty on the basis of promises which were never kept. He urges that his plea was therefore involuntary and should be vacated. He relies on such cases as United States ex rel. Elksnis v. Gilligan, 256 F.Supp. 244, 253 (S.D.N.Y.1966), contending that "[t]he fact that the promise may not have been deliberately designed or intended to influence or to induce the defendant to plead guilty is not material —the question is did it have that impact." Petitioner contends that it did.

Petitioner then argues that he has not waived his right to attack the plea and the sentence. He notes that he entered his plea only on his understanding that the District Attorney's Office would reveal that his cooperation was substantial and that his sentences would amount to no more than a "couple of misdemeanors" and that the State never sought such a disposition nor did it state that his cooperation was substantial. At the sentencing, moreover, petitioner asserts

torney's Office in their continuing investigation of the extortion ring. Mr. Grebow said that they would not give Burke immunity. However, that if any indictment in addition to those already existing was returned against him by virtue of his cooperation, it would 'not be held against him.' Furthermore, if Burke's co-operation was substantial, he could rely on all his cases being disposed of on the basis of a couple of misdemeanors. I communicated the above to Burke, and he elected to talk to the detective and with Mr. Grebow.

"Now, I am aware of the fact that the qualifying words which Mr. Grebow spoke

were 'if Burke's co-operation were substantial'. Obviously, I have never been, and will never be, in a position to know whether his co-operation was substantial. I believe, in part—although I also don't know this, in part—I think Kaminsky's indictment was returned against him was at least part contributed to by Mr. Burke. I don't know whether any other information, whether substantial or not, was given by him to the District Attorney's Office, but those are the notes I made here."
(Transcript of Sentence Proceedings, January 20, 1967,—Exhibit 4 in Hearing on present proceedings—at 6–7).

he was cowed by the intimidations of the court requiring that he must either be prepared for sentence or withdraw his pleas and stand trial on the counts of both indictments. Faced with such alternatives, petitioner argues that his decision to stand on the pleas as entered could not be viewed as voluntary. Moreover, he urges that he decided not to change his plea at sentencing because he believed he could attack the sentencing on appeal and vindicate his right.

Finally, petitioner contends that the State should be precluded from using information which he provided in any retrial based on the 1966 indictment that resulted from that information. United States ex rel. Caserino v. Denno, 259 F.Supp. 784 (S.D.N.Y.1966).

Respondent argues that the plea of guilty waived all jurisdictional defects. Petitioner was told prior to the plea that the New York police believed he had not fully cooperated with them, and respondent contends that he accepted the "lesser" pleas on the indictments with that knowledge. Respondent relies on North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (decided November 23, 1970), to support his view that petitioner's plea "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." (Id. at 31, 91 S.Ct. at 164, 27 L.Ed.2d at 168).

Respondent observes that petitioner has never sought to argue that the evidence he provided which led to his confession was tantamount to a forced confession. Taken altogether, respondent asserts that petitioner's actions constitute a waiver.

Finally, respondent contends that, even if this court were to determine that petitioner's original plea was involuntary, the opportunity to withdraw it at sentencing, and the decision not to, waived any right petitioner may have had to challenge the plea.

### DISCUSSION

The Supreme Court has most recently spoken on the question of voluntariness of guilty pleas in North Carolina v. Alford, supra. Alford pleaded guilty, although disclaiming guilt because of threat of a death penalty, and was sentenced to 30 years imprisonment. In affirming the determination that Alford's guilty plea was voluntary and intelligent, the Court stated:

"That he would not have pleaded except for the opportunity to limit the possible penalty does not necessarily demonstrate that the plea of guilty was not the product of a free and rational choice, especially where the defendant was represented by competent counsel whose advice was that the plea would be to the defendant's advantage." (Id. at 31, 91 S.Ct. at 164, 27 L.Ed.2d at 168).

Earlier the Supreme Court had noted that "[a] guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void * * * 'A plea of guilty differs in purpose and effect from a mere admission or an extra-judicial confession; it is itself a conviction. * * * Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.' Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009." Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 473 (1962).

On the specific issue of a promise inducing a plea of guilty, it has been observed that due process of law requires that should the promise not be honored, "the judge, on his own motion, reinstate the not guilty plea and reinvest the defendant with the fundamental rights accorded him under our accusatory system of justice. Of course, an accused so restored to his original position may well decide to plead guilty again, but this must be a matter of his own free will and reasoned choice." United States ex rel. Elksnis v. Gilligan, supra, 256 F. Supp. at 249.

In the application here there is some question as to whether the promises made to petitioner were kept. At issue particularly is the question whether petitioner's cooperation was substantial. Petitioner asserts that he pled guilty to the felony and misdemeanor on the understanding that at sentencing the penalties would in fact amount to no more than a disposition on the basis of a couple of misdemeanors. When it became clear that this would not be the case, petitioner objected to the entry of judgment.

■ Whether petitioner was justified in believing that once he pled to a felony he would be punished as if he had pled to a misdemeanor, and whether the promises were kept, are questions which need not be determined here because of his later waiver. At sentencing, the court gave petitioner a clear and definite opportunity to accept the pleas offered and formerly pled to by him, or go to trial on the merits of the indictments. At trial he could have argued violation of his Fifth Amendment rights because of the cooperation and information which he provided. Petitioner intelligently chose to waive this right. We do not have here a case in which the defendant protests his innocence or is unaware of the legal significance of his acts. The record shows that petitioner was a man remarkably experienced as to the significance of legal acts and rights. At the time of the proceedings herein he had been convicted some 18 times (seven of these convictions for the same type of felony as here) and, in petitioner's own words has "a record a yard long." (Transcript of Hearing, December 9, 1970, at 50–52). Petitioner was represented by especially competent counsel

and was given ample time to discuss the new situation with which he was confronted at sentencing.

Petitioner knew what the alternatives were at sentencing, and intelligently made his choice. He may well have been under the pressure of the moment to make this decision, but it is reasonable to interpret his behavior as reaffirming "his plea because in his view he had absolutely nothing to gain by a trial and much to gain by pleading." North Carolina v. Alford, supra, 400 U.S. at 37, 91 S.Ct. at 167.[4]

### CONCLUSION

Although counsel for the petitioner has raised and ably pressed significant issues bearing on the rights of petitioner, nevertheless for the reasons stated above it is found that petitioner's pleas were voluntary and that his constitutional rights have not been infringed. The court is most grateful to Robert B. Fiske, Jr., Esq., for the conscientious and able presentation made by him on behalf of petitioner.

The application for a writ of habeas corpus is denied.

It is so ordered.

### ON APPLICATION FOR CERTIFICATE OF PROBABLE CAUSE

· [2] By Memorandum of this court dated April 15, 1971 (filed April 16, 1971), petitioner's application for a writ of habeas corpus was denied. Notice of appeal from that decision was filed May 7, 1971, and petitioner now moves for a certificate of probable cause as required under 28 U.S.C.A. § 2253 and Rule 22(b) of the Federal Rules of Appellate Procedure. As the Memorandum of

4. On the facts of this case, the holding in United States ex rel. Elksnis v. Gilligan, 256 F.Supp. 244 (S.D.N.Y.1966), does not compel a result contrary to that reached here. Nor is United States ex rel. Caserino v. Denno, 259 F.Supp. 784 (S.D. N.Y.1966), helpful to petitioner because there the information given by defendant in reliance on police promises that if he cooperated he would not be prosecuted was used in the trial. The writ was there granted unless defendant was retried. Here, the petitioner waived his right to fight the introduction or use at trial of evidence induced from him.

April 15th made clear, important questions of law are presented by this application.

Accordingly, certificate of probable cause to appeal is hereby granted.

It is so ordered.