The STATE of Ohio, Appellee,

v.

FILCHOCK, Appellant.

[Cite as *State v. Filchock* (1996), 116 Ohio App.3d 572.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 96–L–065.

Decided Dec. 2, 1996.

*Ron M. Graham,* Mentor City Prosecutor, for appellee.

*James K. Farrell, Jr.,* for appellant.

NADER, Judge.

This is an accelerated appeal from the Mentor Municipal Court. On November 17, 1995, defendant-appellant, Joseph J. Filchock, pleaded not guilty to one count of driving while under the influence of alcohol ("DUI"), in violation of R.C. 4511.19(A)(1), one count of refusing to submit to a chemical test, in violation of R.C. 4511.191, one count of driving under suspended license ("DUS"), in violation of R.C. 4507.02, one count of failure to control, in violation of R.C. 4511.202, one count of falsification, in violation of R.C. 4513.361, and one count of carrying a concealed weapon, in violation of R.C. 2923.12. The weapon charge was referred to the grand jury, and a bench trial on the remaining charges was set for December 26, 1995.

When the day of trial arrived, appellant appeared without counsel. After an extensive colloquy with the trial judge, appellant changed his plea to no contest on the DUI charge (trial court case No. 95 TRC 6433A) and the DUS charge (trial court case No. 95 TRC 6433B) in exchange for a dismissal of the others. The judge subsequently found appellant guilty on the DUI and DUS charges. For the former, he sentenced appellant to one year in the Lake County jail, fined him $1,000, suspended his operator's license for five years, and assessed court costs against him. On the latter, the judge sentenced him to six months in the Lake County jail, to be served concurrently with the other term, and fined him $300.

Appellant filed a Crim.R. 32.1 motion to withdraw the no contest plea on December 29, 1995, which the judge denied on January 16, 1996. The judge stayed the sentences pending this appeal on the DUS charge, and a companion appeal on the DUI charge. See *State v. Filchock* (Nov. 29, 1996), Lake App. No. 96–L–021, unreported, 1996 WL 761994.

In his only assignment of error, appellant argues that the trial judge erred in overruling his motion to withdraw his no contest plea on the grounds that his plea was taken contrary to the dictates of Crim.R. 11 and in violation of his constitutional rights. We agree. Our review of the record indicates four separate problems with the judge's involvement in taking this plea.

■ First, Crim.R. 11(E), the subsection applicable to the DUS charge, which is a petty misdemeanor, expressly mandates that no court shall take a plea of no contest without first informing the defendant of the effect of the plea as explained in Crim.R. 11(B)(2). Here, the judge failed to inform appellant of the effect of his

no contest plea, and, consequently, the plea is invalid. *State v. Watkins* (Sept. 1, 1993), Summit App. No. 15822, unreported, 1993 WL 329903.

Second, Crim.R. 11(E) stipulates that "[t]he counsel provisions of Rule 44(B) and (C) apply to this subsection." Crim.R. 44(B) expressly forbids a trial court to sentence a person accused of a petty offense who is unable to obtain counsel unless the accused is reappraised of his right to a court-appointed attorney, and unless the court secures a waiver of this right before sentence is imposed. In this case, the judge failed to reapprise appellant of his right to counsel and did not obtain a waiver of that right. The plea is invalid for this reason as well. *Garfield Hts. v. Gipson* (1995), 107 Ohio App.3d 589, 669 N.E.2d 264.

The third and fourth problems are of constitutional dimension. The Due Process Clause of the United States Constitution requires that pleas of guilty or no contest be both knowing and voluntary. *Parke v. Raley* (1992), 506 U.S. 20, 28–30, 113 S.Ct. 517, 523, 121 L.Ed.2d 391, 403–404. Failure on either of these points renders enforcement of the plea unconstitutional. *State v. Engle* (1996), 74 Ohio St.3d 525, 527, 660 N.E.2d 450, 451–452.

A review of the transcript of the proceedings, wherein the trial judge took appellant's no contest plea on the DUS charge, reveals that the plea was not knowing in the constitutional sense. In order for a person accused of a crime to understand what rights he waives in pleading to the charge, it must appear on the face of the record that the accused is advised of a litany of constitutional rights, and that his plea waives them. *Boykin v. Alabama* (1969), 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274, 279–280. In *State v. Beatty* (Nov. 24, 1995), Geauga App. No. 94–G–1884, unreported, at 4–5, 1995 WL 803804, we held that a trial court must advise a person accused of a petty misdemeanor that (1) he has a right to a trial by jury, (2) the burden is on the prosecution to prove the charge beyond a reasonable doubt if he chooses to go to trial, (3) he has the right to cross-examine his accusers, (4) he has a right not to testify, and (5) he has a right to compulsory process. Here, the judge failed to advise appellant of these rights. His plea cannot be considered "knowing" because there is no evidence that he understood what he was relinquishing. Consequently, the plea is invalid. *Id.*

Our review of the trial transcript has also unearthed a more disturbing problem. It appears that, when appellant showed up for trial without a lawyer, the trial judge was irritated with him. The judge believed appellant's failure to have a lawyer to be a purposeful delaying tactic, and that appellant was "playing the system." The judge then took the following three actions. First, he

proposed that appellant plead to the DUI and the DUS charges in exchange for a dismissal of the others.

Second, the judge promised that, if appellant pleaded, he would receive only one year of imprisonment for the DUI charge, plus other penalties, such as the suspension of his driver's license for five years and a statutory fine (the "one-year package"), and that the judge would run the six-month sentence on the DUS charge concurrently. In effect, the judge was offering a net sentence of one year in jail.

Third, if appellant did not agree to change his plea, the judge indicated that it would deny appellant's *pro se* motion for a continuance, and "guaranteed" that he would run the sentences consecutively if the judge "got" appellant on more than one of the four pending charges. It is quite apparent that, by this point, the judge viewed the prosecution of these charges as a personal endeavor. Throughout the encounter, the judge indicated that there was "a good likelihood" that he would find appellant guilty on more than one charge, and that the judge believed that the only way it would find appellant not guilty would be because of some kind of technicality (which, of course, appellant, being a layman, could not hope to raise). Under these circumstances, appellant had little choice but to accept the judge's plea bargain.

The Due Process Clause requires that the decision to plead to a charge, instead of going to trial, must be truly voluntary, and that it must be a product of the accused's own free will. *Brady v. United States* (1970), 397 U.S. 742, 748, 90 S.Ct. 1463, 1468–1469, 25 L.Ed.2d 747, 756. Each of these three acts served to undermine appellant's free will to such an extent that we cannot hold that his plea was voluntary in the constitutional sense.

In contrast to the approach taken in the federal courts,[1] trial judges in Ohio are permitted to participate to some undetermined extent in plea negotiations, but such participation must be carefully scrutinized to determine if the judge's intervention adversely affected the voluntariness of the defendant's plea. *State v. Byrd* (1980), 63 Ohio St.2d 288, 293, 17 O.O.3d 184, 187–188, 407 N.E.2d

---

1. Fed.R.Crim.P. 11(e)(1) states categorically that "[t]he court shall not participate in any [plea] discussions." As explained by one court,

"The commentaries regarding this injunction, and consideration of its intendment, leave no room for doubt that its purpose and meaning are that the sentencing judge should take no part whatever in any discussion or communication regarding the sentence to be imposed prior to the entry of a plea of guilty or conviction, or submission to him of a plea agreement. * * *

"The primary concern of those who would dissociate the judge from the plea bargaining process has been that judicial intervention may coerce the defendant into an involuntary plea that he would not otherwise enter." *United States v. Werker* (C.A.2, 1976), 535 F.2d 198, 201–202.

1384, 1388. Whatever participation may be considered permissible under our approach, it is highly irregular for the court itself to propose a plea bargain. Normally, the prosecutor has sole discretion in deciding whether or not to pursue a certain charge, or to offer the accused an opportunity to plead guilty in exchange for a declaration of *nolle prosequi* for other pending charges, a recommendation of a lenient sentence, or some other form of consideration. *State v. Cray* (Dec. 18, 1986), Cuyahoga App. No. 51534, unreported, 1986 WL 14748. See, also, *State v. Rothman* (Mar. 14 1985), Cuyahoga App. No. 48608, unreported, 1985 WL 9762.

The trial court itself has no business participating at this early stage of the process. One of the fundamental requirements of due process, which forms a cornerstone of the judicial system, is a fair and impartial judge. In the words of the late Justice Thurgood Marshall:

"The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases. This requirement of neutrality in adjudicative proceedings safeguards the two central concerns of procedural due process, the prevention of unjustified or mistaken deprivations and the promotion of participation and dialogue by affected individuals in the decisionmaking process. See *Carey v. Piphus,* 435 U.S. 247, 259–262, 266–267 [98 S.Ct. 1042, 1050–1052, 1053–1054, 55 L.Ed.2d 252, 262–264, 266–267] (1978). The neutrality requirement helps to guarantee that life, liberty, or property will not be taken on the basis of an erroneous or distorted conception of the facts or the law. See *Mathews v. Eldridge,* 424 U.S. 319, 344 [96 S.Ct. 893, 907, 47 L.Ed.2d 18, 38–39] (1976). At the same time, it preserves both the appearance and reality of fairness, 'generating the feeling, so important to a popular government, that justice has been done,' *Joint Anti–Fascist Committee v. McGrath,* 341 U.S. 123, 172 [71 S.Ct. 624, 649, 95 L.Ed. 817, 854] (1951) (Frankfurter, J., concurring), by ensuring that no person will be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him." *Marshall v. Jerrico, Inc.* (1980), 446 U.S. 238, 242, 100 S.Ct. 1610, 1613, 64 L.Ed.2d 182, 188.

If a judge takes it upon himself or herself to say to an accused that he ought to plead to the allegation in the indictment, there is a clear, if unspoken, indication of the judge's rather dismal evaluation of the accused's chances of acquittal should he choose instead to stand upon his right to trial. The implication is even more devastating where, as here, the judge sits as the trier of fact. That is not to mention this judge's overt communications to appellant that he considered his defenses to be meritless. It stretches the appearance of neutrality past the breaking point for a trial court to usurp the role of the prosecutor by formulating

and proposing a plea bargain, and neither the state nor the federal constitution will countenance such a practice.

Further, the judge's proposal in this case that appellant should plead no contest to the DUI and DUS charges was coupled with a promise that appellant would receive a net sentence of only one year in prison. A similar offer of sentence by a trial judge was held to invalidate a subsequent plea in the case *United States ex rel. Elksnis v. Gilligan* (S.D.N.Y.1966) 256 F.Supp. 244. The eloquent words of Judge Weinfeld in that case are equally applicable to the facts of the one at bar:

"The unequal positions of the judge and the accused, one with the power to commit to prison and the other deeply concerned to avoid prison, at once raise a question of fundamental fairness. When a judge becomes a participant in plea bargaining he brings to bear the full force and majesty of his office. His awesome power to impose a substantially longer or even maximum sentence in excess of that proposed is present whether referred to or not. A defendant needs no reminder that if he rejects the proposal, stands upon his right to trial and is convicted, he faces a significantly longer sentence. One facing a prison term, whether of longer or shorter duration, is easily influenced to accept what appears the more preferable choice, and no matter how well motivated the judge may be, the accused is subjected to a subtle but powerful influence. A guilty plea predicated upon a judge's promise of a definite sentence by its very nature does not qualify as a free and voluntary act." (Footnote omitted.) *Id.* at 254.

Here the trial judge's promise to impose the "one-year package," even isolated from the rest of the context of the court's interaction with appellant, placed enough influence on him to condemn the no contest plea as involuntary.

But beyond this impermissible promise, the judge in this case pressed his involvement one step further. The judge told appellant that if he did not accept the plea bargain, he would be tried to the court immediately without the benefit of counsel, would almost certainly be found guilty, and would incur greater penalties in the form of consecutive sentences. The veil hiding the threat of a greater sentence where a court merely promises a lighter sentence for accepting a plea bargain was stripped away. The "subtle but powerful" influences on the accused that so concerned Judge Weinfeld in *Gilligan* were replaced by the overt and overwhelming pressures produced by the judge's direct threat.

"A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void." *Machibroda v. United States* (1962), 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 473, 478. The no contest plea at issue here was induced by both. Consequently, it is invalid. *Id.; State v. Ball* (1990), 66 Ohio App.3d 224, 226, 583 N.E.2d 1094, 1095 (plea lacks voluntariness and is

therefore ineffective where the trial judge went "to great lengths to intimidate appellant into accepting a plea bargain").

While we sympathize with the municipal court judge in his struggle to cope with the crushing weight of cases clogging his docket, we will not tolerate such an egregious deprivation of basic civil liberties in the name of judicial economy.

For all of the foregoing reasons, appellant's assignment of error is well taken.

■ Appellant also requests that we direct that this case be assigned to a new judge on remand. He basically challenges the municipal court judge's impartiality in this matter, and requests that we disqualify him from participating in further proceedings related to the prosecution of his case. However much we may agree with appellant's position, the Revised Code has set forth a certain procedure for resolving questions regarding the impartiality of judges in courts inferior to the court of common pleas. R.C. 2937.20 requires a party alleging that a judge of a municipal court is biased to file an affidavit of prejudice with a judge of the court of common pleas and to request a reassignment. A court of appeals is without authority to pass upon the disqualification of a municipal court judge. *Nicolaci v. Littlejohn* (1989), 55 Ohio App.3d 147, 148, 563 N.E.2d 368, 369–370.

We reverse the judgment of the municipal court denying appellant's motion to withdraw the no contest plea. Appellant's conviction on the DUS charge in Mentor Municipal Court Case No. 95 TRC 6433B is hereby vacated, and the case is remanded with instructions that appellant be permitted to plead anew, and for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

FORD, P.J., and JOSEPH E. MAHONEY, J., concur.