JOURNAL ENTRY AND OPINION
{¶ 1} This is an appeal from an order of Judge Kathleen A. Sutula that denied Carl Gaston's Crim.R. 32.1 motion to withdraw his guilty plea. He claims the plea was involuntary, that the judge failed to comply with Crim.R. 11(C) before accepting it, and that the judge imposed consecutive sentences without determining whether the offenses were allied. We affirm.
 {¶ 2} Gaston pleaded guilty to one count each of aggravated robbery,[1] kidnapping,[2] theft of a motor vehicle,[3] and failure to comply with the order of a police officer.[4] On April 17, 2001, the judge sentenced the thirty-five year old Gaston to maximum terms on all counts; ten years each for the aggravated robbery and kidnapping offenses, eighteen months for the theft offense, and five years for the failure to comply offense. She imposed the terms consecutively, except for the theft sentence, resulting in a total prison term of twenty-five years. Gaston appealed the sentence and, on February 7, 2002, the conviction was affirmed.[5]
 {¶ 3} On September 13, 2002, he filed a motion to withdraw his guilty plea in which he claimed he was unfairly coerced into entering the plea, that his lawyer gave him erroneous sentencing advice, and that the judge sentenced him consecutively for allied offenses of similar import. The State moved to dismiss on the grounds that the motion did not show the manifest injustice necessary under Crim.R. 32.1, and the judge denied Gaston's motion on February 24, 2003. Gaston states four assignments of error, which are reproduced in Appendix A.
I. Subject Matter Jurisdiction
 {¶ 4} When a defendant takes a direct appeal challenging a guilty plea, the trial judge loses jurisdiction to entertain a Crim.R. 32.1 motion for withdrawal of the plea.[6] In this case, however, Gaston filed a direct appeal of his sentence only, and did not question his plea.[7] Although at least one appellate decision has found that appeal of a sentence divests the trial judge of jurisdiction over a subsequent Crim.R. 32.1 motion,[8] the Ohio Supreme Court's language in State exrel. Special Prosecutors, supra, is less broad. That opinion found that the trial judge had no jurisdiction because granting a motion to withdraw was "inconsistent with the judgment of the Court of Appeals affirming the trial court's conviction premised upon the guilty plea."[9] Therefore, because the motion to withdraw was "within the compass"[10] of the appellate court's judgment, the judge had no jurisdiction to consider it.
 {¶ 5} The principle expressed in State ex rel. SpecialProsecutors is viewed as part of the law of the case doctrine, which bars the relitigation of issues resolved in appellate decisions.[11] Therefore, the bar of inconsistent judgments reaches only as far as the "mandate" of the appellate court, and issues not resolved in its opinion remain within the trial judge's authority.[12]
 {¶ 6} Although issues not resolved by the appellate court are not barred on jurisdictional grounds, questions may arise as to whether they should have been brought on appeal and are, therefore, barred by the doctrine of res judicata. In State v. Bush,[13] the Ohio Supreme Court ruled that a post-sentence motion to withdraw a guilty plea need not be made within the time allowed for taking a direct appeal from the conviction.[14] The court adopted a flexible rule for assessing the timeliness of Crim.R. 32.1 motions, and stated that "undue delay" was a factor to be assessed in determining whether to grant the motion. The Bush decision concluded that a motion to withdraw a plea is not a collateral attack, and is part of the original action,[15] but this reasoning was used only to distinguish the Crim.R. 32.1 motion from a postconviction relief petition. The decision did not address whether res judicata applied to motions that could have been raised on direct appeal.
 {¶ 7} One might argue that res judicata does not apply to Crim.R. 32.1 motions because they are part of the original action, and that failure to raise an issue at an earlier stage should be considered under the doctrine of waiver. This conclusion would allow some claims to go forward because waiver can be forgiven under the doctrine of plain error; an issue barred by res judicata, however, cannot be saved by resort to the doctrine of plain error. Although the defense of res judicata can be waived, once raised its application is mandatory.[16]
 {¶ 8} Although the Bush decision concluded that a motion to withdraw a plea is not a collateral attack, this does not mean that res judicata is not applicable to such a motion. Res judicata applies to "any proceeding" initiated after a final judgment of conviction and direct appeal.[17] Even though filed within the same criminal case, a post-judgment motion must still be defined as a "proceeding" within that case. Therefore, res judicata bars any part of the motion that could have been raised on direct appeal.
Gaston's Claims
 {¶ 9} Because the motion to withdraw the plea is not jurisdictionally barred, we must assess its claims individually. Gaston first claims the judge erred in imposing consecutive sentences without first holding a hearing to determine whether any of his offenses were allied, pursuant to R.C. 2941.25. However, he raised an argument concerning allied offenses in his direct appeal. Even though his argument here is not identical to that raised on appeal, we find that a ruling in his favor would be inconsistent with our prior appellate decision. Therefore, although his entire motion is not jurisdictionally barred, this particular claim was subject to dismissal for lack of subject matter jurisdiction. Any relief available on this claim must be sought in a motion to reopen the appeal.[18]
 {¶ 10} The second claim also concerns the allied offense hearing, but challenges the voluntariness of his plea rather than the validity of the consecutive sentences. The Gaston I court found that he waived a challenge to the allied offense determination by failing to raise it at trial. Therefore, even though he cites authorities for the proposition that an allied offense inquiry cannot be waived, the law of the case doctrine barred the judge from considering this claim. As with the other portion of his allied offense challenge, Gaston must pursue this claim, if at all, in an application to reopen the appeal.
 {¶ 11} The third assignment claims the plea was involuntary because the judge erroneously informed him that he was subject to five years of post-release control. Gaston's motion did not challenge the judge's notice of post-release control, and therefore he cannot raise the claim here. In any event, the judge properly informed him that he was subject to a mandatory five-year period of post-release control for his first degree felony convictions,[19] and his claim that this period was within the parole board's discretion has no merit.
 {¶ 12} The final assignment, which claims his plea was not voluntarily made because it was "induced by promises and threats," bears closer scrutiny. The transcript of proceedings shows the guilty plea was obtained on the eve of trial under extraordinary circumstances. Before jury selection began on Monday morning, March 19, 2001, Gaston rejected, on the record, a plea offer that would have nolled the third count, theft of a motor vehicle, in exchange for a guilty plea to the other three charges. The judge then involved herself in the plea bargaining process, as follows:
"THE COURT: So Mr. Gaston, you want to put these facts in frontof the jury because you're not guilty. Right?
 "MR. GASTON Yes, your Honor.
 "THE COURT: Okay. We'll see how that goes. And does Mr. Gaston havea prior record? Oh, he does.
 "MR. DELANEY (Gaston's lawyer): Yes, your Honor.
 "MS. TRAVAGLINI (Assistant Prosecutor): Yes, your Honor.
 "THE COURT: Mr. Gaston has a very extensive prior record.
 "THE COURT [sic]: Mr. Delaney, have you explained to your client thatthe sentencing laws of the State of Ohio require the Court to look atvarious factors, and one of those factors is remorse and takingresponsibility for the actions?
 "MR. DELANEY: Your Honor, I have but give me one more second. Sincethe Court put that on the record let me put that to his attention.
 "THE COURT: Well, just because, you know, many times defendants don'trealize that courts can look at remorse as indicated by their willingnessto plead to things they have done. And say [sic] for trials, things thatthey have not done. And obviously I don't know today which is true inthis case, but at the conclusion of the trial the Court will be in a fineposition to determine whether or not there was remorse or lack of remorseas evidenced by what goes on at the trial. And sometimes I thinkdefendants don't know that that's a very serious factor that the Courtlooks at. Especially when the Court is determining whether to run asentence consecutive, meaning one to follow the other, or whether to runa sentence concurrently. And I think that that's a very importantsentencing factor that defendants need to have discussed in private andin confidence with their attorneys. Okay?
 "MR. DELANEY: Thank you, your Honor. That reinforced what I'veindicated and let me just speak to him again with that.
 "THE COURT: Okay.
 "MR. DELANEY: We're ready, your Honor.
 "THE COURT: Okay. Bring out the jury."
 {¶ 13} On Tuesday morning, March 20, 2001, after the jury was selected, Gaston indicated a willingness to change his plea. The assistant prosecutor stated that the State would only accept a plea to all charged offenses, to which he agreed. In questioning Gaston about the voluntariness of his pleas, the judge asked:
"THE COURT: Has anyone, including your attorney, the Prosecutor orthis court made any promises, threats or other inducements to you tocause you to enter this plea?
 "MR. GASTON: I wouldn't say no promises. I wouldn't say no promises.
 "THE COURT: No threats?
 "MR. GASTON: I wouldn't say no threats."
 {¶ 14} Gaston's motion also attached two affidavits, one from his mother and another from Tawana Spratt, whose relationship with Gaston was not disclosed. Ms. Spratt averred that, after the judge's comments on March 19, 2001, she witnessed a conversation between the judge and Gaston's lawyer, in which the judge stated that he would receive a six-year prison term in return for a guilty plea. Gaston's mother swore that his lawyer told her that a guilty plea would result in a six-year sentence, and that she agreed to influence her son to plead guilty because of this promise.
 {¶ 15} The judge's inclusion of herself in the "promises or threats" inquiry is ironic in light of her statement to Gaston prior to jury selection. Her remarks, if not an explicit threat, are unmistakable; whatever veil exists is so thin as to be transparent. She informed Gaston that if he was found guilty he would be punished for his decision to go to trial. Less apparent, yet cognizable, is a veiled promise that a guilty plea would save him from the consecutive sentences the judge nevertheless imposed. The transcript starkly reveals that Gaston's plea was induced by promises and threats, and that those threats came from, of all places, the judge herself.[20]
 {¶ 16} A judge should not be involved in plea discussions between the prosecutor and a defendant because the judge's mere presence has a "subtle but powerful influence."[21] Therefore, any judicial participation in negotiations could compromise the plea's voluntariness.[22] Although the Ohio Supreme Court has not adopted a per se rule finding all judicial participation unconstitutional, such participation in negotiations is closely scrutinized for coercion.[23] The judge's comments here go well beyond any acceptable level of involvement; she threatened increased punishment if Gaston exercised his constitutional right to trial. The "`subtle but powerful'" influence already present in any judicial participation was "replaced by the overt and overwhelming pressures produced by the judge's direct threat."[24]
 {¶ 17} A finding of manifest injustice under Crim.R. 32.1 does not mean a defendant did not commit crimes or that he did not deserve a severe punishment. The concept of justice must include proper respect for the judicial system and the rights of all criminal defendants. When jealously maintained, this respect safeguards the rights of all while meting proper punishment to offenders. Individual judges should not take it upon themselves to disregard criminal defendants' rights simply because they are convinced of a particular defendant's guilt. Such conduct threatens the rights of all defendants and works a manifest injustice to the American concept of freedom.
 {¶ 18} Remorse is a statutory factor to consider when sentencing an offender, but a defendant's decision to go to trial is not a measure of remorse. A defendant who has committed an offense might feel remorse yet exercise the right to trial because he believes the indictment charges offenses that were not committed, because he believes he has an affirmative defense or mitigating evidence, or simply because he wishes to retain the right and put the government to its proof. Regardless of the reasons, the exercise of one's constitutional right to trial is not a factor, directly or indirectly, to be considered when assessing an offender's remorse. Telling a defendant, on the eve of trial, that the evidence at trial will be used to determine remorse is the same as telling him that the decision to go to trial will adversely affect him at sentencing.
 {¶ 19} Although evidence at a guilty plea hearing might be less detailed than evidence at trial, a judge is still required to ascertain the facts constituting the offense before accepting a guilty plea. Moreover, the facts adduced at a plea hearing might omit mitigating evidence or overemphasize aggravating circumstances, because the goal of such a hearing is to ensure that the defendant has committed the offense rather than to ascertain its particular details. Therefore, it is both improper and misleading for a judge to tell a defendant that the facts presented at trial will be considered when determining remorse; the facts of the offense will always be considered, whether presented at a plea hearing, at trial, or at a sentencing hearing.[25] It is not the judge's place to advise a defendant of the best method for presenting those facts, and it is grossly improper to inform a defendant that a particular method of presenting the facts will be more harmful than others, especially when that method is a fundamental constitutional right.
 {¶ 20} Although challenges based on the transcript alone are barred by res judicata, the affidavits attached to Gaston's motion were not part of the trial record and could not have been raised on appeal. If the affidavits shed new light on the record evidence, the transcript of the plea hearing can be reconsidered. The affidavits, however, do not uncover a new basis for relief within the transcript.
 {¶ 21} If res judicata did not apply, the manifest injustice standard of Crim.R. 32.1 would require the grant of Gaston's motion based on the judge's recorded comments alone. The injustice of the judge's remarks is not only manifest, but stark and appalling. However, res judicata does apply, and we can consider the transcript only if Gaston's affidavits, which allege facts outside the trial record, shed new light on the meaning of the judge's remarks. However, the affidavits do not suffice to reopen inquiry into the meaning of the judge's remarks because they add nothing to the threat already apparent in the transcript.
 {¶ 22} The affidavits also fail to show any independent basis for withdrawal of the plea. A judge has the authority to assess the credibility of affidavits before deciding whether to grant a hearing in a postconviction petition.[26] This principle is transferable to Crim.R. 32.1 motions,[27] and the affidavits here lack credibility. Both aver a sentencing agreement between Gaston's lawyer and the judge and, despite our disapproval of the judge's recorded comments, we indulge a heavy presumption against the mendacity alleged in the affidavits.[28] Had something of this nature occurred, we would expect an affidavit from Gaston's trial lawyer to that effect. In the absence of an affidavit from the lawyer, who is also an officer of the court, the claims lack credibility under Calhoun and are unrelated to the judge's recorded comments. Therefore, we must affirm the denial of the motion and require Gaston to seek relief in an application to reopen his direct appeal. The fourth assignment is overruled.
Judgment affirmed.
APPENDIX — ASSIGNMENTS OF ERROR
 {¶ 23} "I. The trial court abused its discretion in denying appellant's motion for withdrawal of guilty plea in order to correct manifest injustice pursuant to crim.r. 32.1 when the trial court erred in sentencing appellant to consecutive sentence first determining whether the offenses were allied offenses of similar import pursuant to R.C.2941.25, The fifth amendment to the united states constitution, article 1, section 10 of the ohio constitution."
 {¶ 24} "II. The trial court abused its discretion in denying appellant's motion for withdrawal of guilty plea, when the trial court failed to substantially comply with mandates of crim.r. 11(c)(2)(a), therefore, appellant's plea was not entered knowing and voluntary."
 {¶ 25} "III. The trial court abused its discretion in denying appellant's motion for withdrawal of guilty plea in order to correct manifest injustice pursuant to crim.r. 32.1 when appellant's plea is void in that the trial court was not in compliance with crim.r. 11(c)."
 {¶ 26} "IV. The trial court abused its discretion in denying his motion for withdrawal of guilty plea in that the appellant's guilty plea was not entered voluntarily because it was induced by promises and threats and because it was not entered of his own free will. violation of crim.r. 11(c)(2)(a)."
Ann Dyke, J., Concurs in judgment only Timothy E. McMonagle, J.,Concurs.
[1] R.C. 2911.01, a first degree felony.
[2] R.C. 2905.01, a first degree felony.
[3] R.C. 2913.02(B)(5), a fourth degree felony.
[4] R.C. 2921.331(C)(5), a third degree felony.
[5] State v. Gaston, Cuyahoga App. No. 79626, 2002-Ohio-506 (Gaston I).
[6] State ex rel. Special Prosecutors v. Judges, Court of CommonPleas (1978), 55 Ohio St.2d 94, 9 O.O.3d 88, 378 N.E.2d 162; Statev. McGee, Cuyahoga App. No. 82092, 2003-Ohio-1966, at 22.
[7] Gaston I, supra.
[8] State v. Zudell, Lorain App. No. 02CA007982, 2002-Ohio-4253, at 11.
[9] State ex rel. Special Prosecutors, 55 Ohio St.2d at 97.
[10] Id.
[11] Hawley v. Ritley (1988), 35 Ohio St.3d 157, 160,519 N.E.2d 390.
[12] State ex rel. Neff v. Corrigan, 75 Ohio St.3d 12, 15-16,1996-Ohio-231, 661 N.E.2d 170.
[13] 96 Ohio St.3d 235, 2002-Ohio-3993, 773 N.E.2d 522.
[14] Id. at 239, 2002-Ohio-3993, at 14.
[15] Id., at 13.
[16] State v. Apanovitch (1995), 107 Ohio App.3d 82, 89, 66 N.E.2d 1041. Because the State has argued that the jurisdictional bar applies to all issues raised in a Crim.R. 32.1 motion filed after a direct appeal, we find this defense tantamount to raising the res judicata defense; therefore, in this case we will view the jurisdictional defense as also raising the defense of res judicata.
[17] State v. Szefcyk, 77 Ohio St.3d 93, 1996-Ohio-337, 671 N.E.2d 233, syllabus.
[18] App.R. 26(B); State v. Murnahan (1992), 63 Ohio St.3d 60,584 N.E.2d 1204.
[19] R.C. 2967.28(B)(1).
[20] Although not at issue here, after accepting the plea the judge also informed Gaston that she would impose maximum sentences "on each and every count" if he failed to cooperate with a pre-sentence investigation. This judge has previously made similar statements, even though her threats violate defendants' constitutional rights against self-incrimination. See State v. Cvijetinovic, Cuyahoga App. No. 81534, 2003-Ohio-563, at 31 (Kilbane, J., concurring in judgment only), citingMitchell v. United States (1999), 526 U.S. 314, 119 S.Ct. 1307,143 L.Ed.2d 424.
[21] State v. Byrd (1980), 63 Ohio St.2d 288, 292, 17 O.O.3d 184,407 N.E.2d 1384, quoting United States ex rel. Elksnis v. Gilligan
(S.D.N.Y. 1966), 256 F.Supp. 244, 254.
[22] Id.
[23] Id. at 293-294.
[24] State v. Filchock (1996), 116 Ohio App.3d 572, 578,688 N.E.2d 1063.
[25] In fact, the judge determined at sentencing that Gaston lacked remorse and that his decision to plead not only failed as an expression of remorse, but actually showed a lack of remorse. In light of this, the most forgiving analysis of the judge's remarks must conclude that they were misleading, while a harsher, yet still reasonable view would conclude the judge made and broke a promise of leniency.
[26] State v. Calhoun, 86 Ohio St.3d 279, 284, 1999-Ohio-102,714 N.E.2d 905.
[27] State v. Lawston, Cuyahoga App. No. 80828, 2002-Ohio-6498, at 6;State v. Christley (May 19, 2000), Portage App. No. 99-P-0022.
[28] In re Disqualification of Olivito (1994), 74 Ohio St.3d 1261,1263, 657 N.E.2d 1361.