{¶ 1} This is an appeal from an order of the Lucas County Court of Common Pleas that denied appellant Marcus Torres' Crim.R. 32.1 motion to withdraw his guilty plea. Torres claims the plea was not knowingly, intelligently, and voluntarily made and that the trial court failed to comply with Crim.R. 11(C)(2) before accepting it. We affirm. *Page 2 
 {¶ 2} This is the second appeal in this case. Torres pled guilty to one count of involuntary manslaughter in violation of R.C. 2903.04(A) and (C), a first degree felony on December 20, 2002, in the Lucas County Court of Common Pleas. After sentencing, he appealed. He limited his appeal to his sentence alone, arguing that the trial court failed to comply with the notice requirements as to postrelease control under R.C.2929.19(B)(3)(c) and (e).
 {¶ 3} In a decision and judgment entry filed on June 30, 2005, we agreed. State v. Torres, 6th Dist. No. L-03-1203, 2005-Ohio-3365. We vacated the original sentence and remanded the case to the trial court for resentencing due to the failure to comply with the requirements of R.C. 2929.19(B)(3)(c) and (e).
 {¶ 4} On remand, the case was assigned to a different trial court judge. Torres filed a motion to withdraw his guilty plea prior to resentencing. After a hearing, the trial court overruled the motion to withdraw the guilty plea. Subsequently, Torres was resentenced to the same six year term of imprisonment as imposed originally. He now appeals the denial of his motion to withdraw his guilty plea. He asserts one assignment of error on appeal:
 {¶ 5} "Assignment of Error no. 1:
 {¶ 6} "The trial court abused its discretion when it denied Marcus Torres' Motion to Withdraw Plea.
 {¶ 7} "A. Crim.R. 32 permits a trial court to set aside a conviction before sentence has been imposed. According to the Supreme Court, these motions are to be *Page 3 
freely allowed and treated with liberality. Mr. Torres filed a motion to withdraw his guilty plea before the court had resentenced him — (the case had been remanded). Was his motion allowed freely and treated with liberality?"
 {¶ 8} Appellant argues that when he entered his guilty plea, the trial court failed to notify him "that based upon his plea, he was subject to a mandatory, five-year term of post release control." He claims that in accepting the guilty plea, without the required notice of postrelease control, the trial court violated Crim.R. 11(C)(2)(a) and that his guilty plea was not knowingly, intelligently, and voluntarily given.
 {¶ 9} In the original appeal, we concluded that the comments from the bench at the plea hearing did not notify appellant that postrelease control was a mandatory part of his sentence. State v. Torres, ¶ 18. We also concluded that the trial court's statement suggested that postrelease control was discretionary, when, in fact, five years of postrelease control is mandatory for first degree felonies. Id.
 {¶ 10} There was a limited discussion of postrelease control in the plea hearing itself. During the hearing, the trial court discussed a potential prison term of three, four, five, six, seven, eight, nine, or ten years for the offense, followed by a discussion that included a reference to postrelease control:
 {¶ 11} "The Court: The only way that you could be allowed out sooner is if the judge allows you to or if at the end of the term, probation — or the parole department would put you on post-release control. That would be for five years. And during that *Page 4 
time if you were to violate, you could be sent back to prison for up to one-half of the time that I originally gave you. Do you understand that concept?
 {¶ 12} "Defendant Torres: Yes, ma'am."
 {¶ 13} The trial court's comments from the bench at the plea hearing suggested that postrelease control was discretionary and not a mandatory part of appellant's potential sentence. The state has argued, however, that statements by the trial court from the bench were not the only notice of postrelease control provided appellant. The state contends that an accurate notice of postrelease control was provided in the plea form reviewed by appellant with counsel and signed by him at the time he made his guilty plea.
 {¶ 14} The form is entitled "Rule 11 Plea Form." It begins: "I withdraw my former not guilty plea and, as to each count or specification below, enter a plea of Guilty * * *" Immediately following the change of plea language is a series of columns with headings of "Count," "Offense R.C. Section Degree," "Possible Prison," and "Possible Fine." The information under each heading was printed, by hand. As completed, the form referred to Count "2." The offense listed was "Involuntary Manslaughter 2903.04(A) and (C) Felony of the First Degree, Lesser Included Offense." Under the heading for "Possible Prison" term was printed "3,4,5,6,7,8,9 or 10 years" and, under "Possible Fine," $20,000.
 {¶ 15} The form included a detailed notice of postrelease control at the preprinted paragraph immediately above appellant's signature: *Page 5 
 {¶ 16} "If I am sentenced to prison for a felony 1 or a felony sex offense, after my prison release I will have 5 years of post release control under conditions determined by the parole board. * * * If I violate conditions of supervision while under post relase [sic] control, the parole board could return me to prison for up to nine months for each violation, for a total of 50% of my originally stated term. If the violation is a new felony I could receive a new prison term of the greater of one year or the time remaining on post release control plus a prison term for a new crime."
 {¶ 17} At the end of Crim.R. 11 questioning of appellant at the plea hearing, the trial court referred to the plea form and cautioned counsel to assure that appellant understood what he was signing. The "Rule 11 Plea Form" was signed by Marcus A. Torres and dated December 20, 2002.
 {¶ 18} On remand, the contents of the plea form were considered by the trial court at the hearing on the motion to withdraw the guilty plea. The trial court concluded that the plea form was sufficient to assure appellant was properly informed as to postrelease control at the time he pled guilty: "Looking at the plea form, I do find that Mr. Torres was properly informed, at least at the time of his plea * * * "
 Res Judicata {¶ 19} We begin with consideration of whether appellant's motion to withdraw his guilty plea was barred under the doctrine of res judicata. "The doctrine of res judicata bars any attempt to raise an issue in a subsequent motion that could have been raised on direct appeal and was not. State v. Szefcyk (1996), 77 Ohio St.3d 93, 95, 671 N.E.2d 233. *Page 6 
This includes motions to withdraw pleas pursuant to Crim.R. 32.1. SeeState v. Jefferies (July 30, 1999), 6th Dist. No. L-98-1316." State v.Kajfasz, 6th Dist. No. L-04-1004, 2004-Ohio-5243, ¶ 6. The doctrine applies to bar motions to withdraw guilty pleas, made after a direct appeal on sentencing alone. State v. Gaston, 8th Dist. No. 82628,2003-Ohio-5825.
 {¶ 20} To apply the doctrine, we must determine whether the issues raised in the motion to withdraw appellant's guilty plea could have been raised on direct appeal from the original judgment of conviction and sentence. Where the issues raised do not require consideration of evidence outside of the record in the original proceedings, the issues should have been raised on direct appeal from the original judgment and res judicata applies. State v. Thomson, 6th Dist. No. L-05-1213,2006-Ohio-1224, ¶¶ 27-29.
 {¶ 21} Appellant based his motion to withdraw his guilty plea based upon the same failure to meet the notice requirements of R.C.2929.19(B)(3)(c) and (e) that he asserted in the appeal of his original sentence. As the nature of any disclosures at the plea hearing of postrelease control was within the record at the time of the original appeal, any challenge to the guilty plea based upon insufficiency of notice of postrelease control should have been raised in the original appeal. Appellant is barred by res judicata from contesting validity of the guilty plea under Crim.R. 32.1 on that basis now. *Page 7 
 Motion to Withdraw Guilty Plea {¶ 22} Even if we were to assume that res judicata does not bar consideration of the merits of appellant's motion to withdraw his guilty plea, appellant's arguments must also fail on the merits.
 {¶ 23} "Crim.R. 11 governs the process of entering a plea." State v.Sarkozy, Slip Opinion No. 2008-Ohio-509, ¶ 8. Crim.R. 11(C)(2)(a) provides:
 {¶ 24} "(C) Pleas of guilty and no contest in felony cases.
 {¶ 25} "* * *
 {¶ 26} "(2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
 {¶ 27} "(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing."
 {¶ 28} As a general rule, presentence motions to withdraw guilty pleas under Crim.R.32.1 are to be freely and liberally granted. State v.Xie (1992), 62 Ohio St.3d 521, 526. The Ohio Supreme Court recognized, however, in Xie, that a defendant does not have an absolute right to withdraw a guilty plea prior to sentencing. Id. at paragraph one of the syllabus. "A trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." Id. *Page 8 
 {¶ 29} "The decision to grant or deny a presentence motion to withdraw a guilty plea is within the sound discretion of the trial court." Id. at paragraph two of the syllabus. Accordingly, in order to find that the trial court abused its discretion, a reviewing court must find that the court's ruling was "unreasonable, arbitrary or unconscionable." Id., at 527, quoting State v. Adams (1980), 62 Ohio St.2d 151, 157.
 {¶ 30} We have the recent Ohio Supreme Court decision in State v.Sarkozy to guide our analysis in this case. Sarkozy concerned the validity of a guilty plea where the trial court totally failed to discuss postrelease control at the plea hearing and the offense to which the defendant pled included mandatory postrelease control. The decision provides a guide as to the procedure and analysis to be undertaken in considering motions to withdraw guilty pleas based upon claimed deficiencies in the trial court's disclosure of postrelease control at the plea hearing.
 {¶ 31} To uphold a guilty plea, there must be substantial compliance with the Crim.R. 11(C)(2)(a) requirement to disclose the maximum penalties. State v. Nero, 56 Ohio St.3d 106, 108. "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." Id., citing State v. Stewart (1977),51 Ohio St.2d 86.
 {¶ 32} In Sarkozy, the Ohio Supreme Court identified the "test for determining substantial compliance with Crim.R.11:
 {¶ 33} "Though failure to adequately inform a defendant of his constitutional rights would invalidate a guilty plea under a presumption that it was entered involuntarily *Page 9 
and unknowingly, failure to comply with nonconstitutional rights will not invalidate a plea unless the defendant thereby suffered prejudice.[State v. Nero (1990), 56 Ohio St.3d 106,] 108, 564 N.E.2d 474. The test for prejudice is "whether the plea would have otherwise been made." Id. Under the substantial-compliance standard, we review the totality of circumstances surrounding [the defendant's] plea and determine whether he subjectively understood [the effect of his plea]." Sarkozy, ¶¶ 19-20, quoting State v. Griggs, 103 Ohio St.3d 85, 2004-Ohio-4415, ¶ 15.
 {¶ 34} The Sarkozy case involved a failure of the trial court "to mention postrelease control at all during the plea colloquy."Sarkozy, ¶ 22. Consequently the trial court failed to inform Sarkozy "that postrelease control would be part of the sentence imposed, the length of postrelease control, or the consequences for violating postrelease control." Id., at ¶ 4. The Ohio Supreme Court concluded that the failure constituted a "total failure to comply" with Crim.R. 11(C)(2)(a). Id., at ¶ 22. The Ohio Supreme Court vacated the plea and remanded the case for retrial.
 {¶ 35} In Sarkozy, the Ohio Supreme Court did not conduct a substantial compliance analysis or prejudice analysis in considering the validity of the guilty plea. The court held that there must be some compliance with Crim.R. 11(C)(2)(a) to prompt a substantial compliance or prejudice analysis in considering motions to withdraw guilty pleas. Id., at ¶¶ 22-23.
 {¶ 36} The court cited its decision in Watkins v. Collins,111 Ohio St.3d 425, 2006-Ohio-5082 as an example of when "some compliance" requires such an analysis: *Page 10 
"In cases such as Watkins, some compliance prompts a `substantial compliance' analysis and the corresponding `prejudice' analysis."Sarkozy, ¶ 23. Watkins concerned claimed sentencing errors and postrelease control. In the case "sentencing entries * * * mistakenly included wording that suggested that imposition of postrelease control was discretionary * * *" Id., at ¶ 53.
 {¶ 37} The Ohio Supreme Court held in Watkins that the incorrect sentencing entries were "sufficient to afford notice to a reasonable person that the courts were authorizing postrelease control as part of each petitioner's sentence. A reasonable person in the position of any of the petitioners would have had sufficient notice that postrelease control could be imposed following the expiration of the person's sentence." Watkins, ¶ 51.
 {¶ 38} In considering the totality of the circumstances in cases involving errors by a trial court in describing postrelease control as discretionary, rather than mandatory at the plea hearing, we have considered whether the written plea agreement, itself, had correctly described the applicable postrelease control for the offense, the fact that the defendant was represented by counsel, and the fact that the trial court inquired in the plea hearing as to whether the defendant understood the terms of his plea agreement. Additional circumstances may be relevant in any given case.
 {¶ 39} In State v. Bach, 6th Dist. No. L-04-1326, 2005-Ohio-4173, the trial judge verbally misinformed the defendant that he "might" be subject to three years of postrelease control. Id., at ¶ 14. However, we concluded substantial compliance with *Page 11 
Crim.R. 11(C)(2)(a) had been shown. The surrounding circumstances included the fact that the written plea form disclosed the fact that three years of postrelease control was mandatory for a felony two or felony three offenses. In addition, "appellant was given the written plea form during the plea hearing, was allowed to review the document with his attorney, and was questioned by the trial judge as to his understanding of that document. " Id. We upheld the guilty plea concluding that "appellant understood the implications of his plea, inclusive of the mandatory three year period of post-release control." Id.
 {¶ 40} In State v. Reed, 6th Dist. No. L-06-1130, 2007-Ohio-4087, we considered Crim.R. 11(C)(2)(a) challenges to pleas due to the fact that the trial court used discretionary rather than mandatory terms. We summarized the circumstances surrounding the plea in the opinion:
 {¶ 41} "* * * [Appellant was informed of post-release control in the colloquy but not in mandatory terms and was given the written plea agreement that accurately described the nature of post-release control. Before the trial court accepted the plea, the court asked appellant if he had reviewed the written plea agreement with his attorney and if appellant had any questions regarding the written plea agreement. Appellant replied that he had reviewed the agreement with his attorney and had no questions." Id., at ¶ 25.
 {¶ 42} We concluded that "[appellant clearly had actual notice that he would receive a maximum of five years of post-release control." Id., at ¶ 26. We found substantial compliance with Crim.R. 11(C)(2)(a). Id. *Page 12 
 {¶ 43} Here the trial court referred to five years of postrelease control during the plea colloquy but incorrectly referred to the postrelease control as discretionary rather than mandatory. The plea agreement was detailed and accurately described mandatory five year postrelease control as part of the sentence. In both the plea colloquy and in the written plea agreement, the consequence of violation of postrelease control was explained. The trial court drew the appellant's attention to the plea agreement in the plea hearing and cautioned appellant's attorney to assure that the appellant understood what he was signing. Appellant signed the plea agreement.
 {¶ 44} Under the circumstances, we conclude that the trial court substantially complied with Crim.R. 11(C)(2)(a) in accepting appellant's guilty plea. A reasonable person in appellant's circumstances would have had actual notice that five years of postrelease control was a mandatory part of his sentence, at the time of his guilty plea. Under the circumstances, appellant subjectively understood that he was waiving any objection to a criminal sentence that included five years of mandatory postrelease control when he signed the plea agreement and entered his guilty plea. We conclude there has been no prejudice to appellant due to the trial court's misstatement that postrelease control was discretionary.
 {¶ 45} Accordingly, we conclude that the trial court did not err in overruling appellant's motion to withdraw his guilty plea, even were the issue not barred by res judicata. Appellant's assignment of error is not well-taken. *Page 13 
 {¶ 46} On consideration whereof, the court finds that substantial justice has been done the party complaining, and that the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
MARK L. PIETRYKOWSKI, P.J., ARLENE SINGER, J., WILLIAM J. SKOW, J., CONCUR. *Page 1